Randy JAYNES *v.* STATE of Arkansas

CA CR 98-852                    987 S.W.2d 751

Court of Appeals of Arkansas
Division IV
Opinion delivered March 17, 1999

*Smith, Maurras, Cohen & Redd, PLC*, by: *Matthew Horan*, for appellant.

*Winston Bryant*, Att'y Gen., by: *O. Milton Fine II*, Ass't Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Judge. Randy Jaynes appeals his conviction in a jury trial of first-degree sexual abuse,

for which he received a three-year sentence in the Arkansas Department of Correction. On appeal he argues: 1) his second trial constituted double jeopardy because the trial court erred in granting the State's request for a mistrial during his defense counsel's opening statement in the first trial because there was no overruling necessity to do so; and 2) the trial court erred in preventing him from introducing evidence that would prove that the complaining witness had fabricated earlier incidents in order to attract attention. We agree that Jaynes's second trial constitutes double jeopardy, and reverse and dismiss.

On September 18, 1997, a jury was selected and sworn to try Jaynes in Sebastian County Circuit Court on a charge of first-degree sexual abuse arising from his alleged fondling of his fourteen-year-old daughter, A.J. The inappropriate touching allegedly took place at Jaynes's residence on July 6, 1996, as Jaynes swam in an eight-foot diameter "kiddie pool" with A.J. and her two young stepsiblings, ages five and three, and later that afternoon in a bathroom while A.J. was attempting to take a shower.

Jaynes's defense was that no sexual abuse took place. Recognizing that the entire case depended on A.J.'s testimony, prior to trial Jaynes had moved to introduce evidence of a specific incident involving A.J. that he believed would tend to prove that she made up stories to get attention. The incident in question occurred on May 9, 1996, when A.J. was admitted to St. Edwards Mercy Medical Center after she had complained to her mother that she had accidentally ingested half a cup of Clorox bleach. Both A.J.'s mother and the treating medical personnel doubted that A.J. had actually swallowed any bleach. The trial court ruled that it was a collateral matter and limited Jaynes to asking about the incident on cross-examination.

In opening statement, Jaynes's defense attorney attempted to describe A.J. as a person who had a propensity for making unfounded allegations. She first related that when A.J. was in the fifth or sixth grade, she told a school counselor that her stepfather had beaten her. The State objected, arguing that the information about A.J.'s story telling was inadmissible character evidence and therefore could not be alluded to in opening statement. The trial

judge ruled that A.J., who had testified about the incident in a preliminary hearing, could be asked about it on cross-examination. The State refused the trial court's offer of an admonition, and the trial resumed.

Jaynes's defense counsel then brought up the Clorox incident. The State objected and asked for a mistrial, which was granted. The trial judge stated on the record that he was not finding that Jaynes's attorney had acted in bad faith, and the State expressly agreed.

On November 21, 1997, Jaynes moved to dismiss the charge on double jeopardy grounds. The trial court denied the motion, and the case was retried before a jury two weeks later. In response to the State's motion *in limine* seeking to limit the defense's opening statement, the court precluded the defense from referring to specific incidents of conduct, but allowed a statement to the effect that A.J. was seeking attention. A.J. subsequently testified on cross-examination that she had accused her stepfather of beating her and that DHS had investigated the allegation. She also testified that she had ingested Clorox and had received emergency medical attention when she told her mother that she had done so.

Jaynes first argues that there was no overruling necessity to declare a mistrial in his first trial and to discharge the jury impaneled to hear the case, because his defense counsel's opening statement was made in good faith, the remarks and observations were not inflammatory, the trial judge considered no less-drastic alternatives, and any prejudice from his counsel's remarks was slight and speculative at best. Accordingly, the second trial constituted double jeopardy because there was no overruling necessity for the mistrial, as required by Arkansas law. He further contends that the mistrial was declared simply because his trial counsel referred to "manifestly true evidence" that would actually be forthcoming in the case and told the jury that the prosecuting witness was trying to get attention, a declaration that the trial court specifically allowed in the second trial. Citing *Wooten v. State*, 220 Ark. 755, 249 S.W.2d 968 (1952), he asserts that if the evidence is ultimately admissible at trial, there is no error or prejudice in allowing reference to it in opening statement.

Jaynes argues further that under Arkansas law, the power of the State or the trial court to declare a mistrial, and require the defendant to stand in jeopardy at a second trial, could not extend beyond cases where it was "impossible" to proceed to judgment in the first case. This standard, referred to as "overruling necessity," is both a case law and statutory formulation. *See, respectively, Whitemore v. State*, 43 Ark. 271 (1884), and Ark. Code Ann. § 5-1-112(3) (Repl. 1997). Citing *Heard v. State*, 322 Ark. 553, 910 S.W.2d 663 (1995)(overruled on other grounds), Jaynes argues that a mistrial must be denied and only a cautionary instruction given unless the contentious remark is "patently inflammatory" or when the remark is so prejudicial that justice cannot be served by continuing the trial, *Holt v. State*, 15 Ark. App. 269, 692 S.W.2d 265 (1985), or where the matter is "beyond repair" by any lesser measures. *Noel v. State*, 331 Ark. 79, 960 S.W.2d 439 (1998). He contends that the trial judge's ruling was infirm because he did not even consider less drastic alternatives.

Finally, Jaynes asserts that by moving for and receiving a mistrial, the State garnered a significant strategic advantage by learning his theory of the case. He contends that there was no indication that in the first trial, the State was prepared to counter his defense, whereas for the second trial, the State had developed a highly effective closing argument that effectively turned the defense on him.

The Arkansas Constitution provides that "no person, for the same offense, shall be twice put in jeopardy of life or liberty[.]" Ark. Const. art. 2, § 8. This prohibition against a second prosecution for the same offense is further discussed in the statute: "A former prosecution is an affirmative defense to a subsequent prosecution for the same offense [when] . . . (3) The former prosecution was terminated without the express or implied consent of the defendant after the jury was sworn . . . unless the termination was justified by overruling necessity." Ark. Code Ann. § 5-1-112 (Repl. 1997). This means that once the jury is sworn, "jeopardy has attached . . . [and] the constitutional right against double jeopardy may be invoked except in cases of 'overruling necessity.'" *Green v. State*, 52 Ark. App. 244, 247, 917 S.W.2d 171, 172 (1996)(citations omitted). Moreover, this statement comports

with the federal standard of "manifest necessity" as articulated in *Arizona v. Washington*, 434 U.S. 497, 505 (1978):

> [I]n view of the importance of the [defendant's valued right to have his trial completed by a particular tribunal], and the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. *The prosecutor must demonstrate "manifest necessity" for any mistrial declared over the objection of the defendant.*

(Emphasis added.)

Arkansas appellate courts have recognized the difficulty of categorizing cases involving claims of double jeopardy and the resulting inadequacy of expounding any standard formula for guidance. *See Jones v. State*, 288 Ark. 162, 702 S.W.2d 799 (1986). Consequently, each case must turn largely on its own facts. *Id.* As was said by the supreme court in *Cody & Muse v. State*, 237 Ark. 15, 21, 371 S.W.2d 143, 147 (1963)(citing with approval 22 C.J.S. *Criminal Law* § 259):

> The manifest necessity permitting the discharge of a jury without rendering a verdict and without justifying a plea of double jeopardy may arise from various causes or circumstances; but the circumstances must be forceful and compelling, and must be in the nature of a cause or emergency over which neither court nor attorney has control, or which could not have been averted by diligence and care.

A trial court's finding of overruling necessity has been has been upheld where the prosecutor failed to return to the trial after a lunch break due to suffering a mental breakdown, *Green v. State, supra*; a jury was unable to reach a verdict, *Shaw v. State*, 304 Ark. 381, 802 S.W.2d 468 (1991); a juror became ill, *Atkins v. State*, 16 Ark. 568 (1855); a material witness for the State became ill, *Jones v. State, supra*; and the defense counsel was found to be intoxicated, *Franklin & Reid v. State*, 251 Ark. 223, 471 S.W.2d 760 (1971).

The decision to grant a mistrial and retry a criminal defendant rests within the sound discretion of the trial judge and will be upheld absent an abuse of discretion. *Shaw v. State, supra.*

However, a manifestly incorrect decision to grant a mistrial will bar subsequent prosecution. *Wilson v. State*, 289 Ark. 141, 712 S.W.2d 654 (1986). We hold that in this instance, Jaynes's second trial constituted double jeopardy, and therefore, this case should be reversed and dismissed.

■ The purportedly inflammatory comment made in opening statement that prompted the mistrial was the following assertion by Jaynes's trial counsel:

> In May of 1996, [A.J.] claims she ingested one-half cup of Clorox in her mother's home and went to the emergency room. This happened less than sixty days prior to the date that she made these allegations. [A.J.] was trying to get her mother or someone's attention.

Jaynes correctly notes that the factual component of this statement, the ingestion of the Clorox, was clearly admissible evidence that he believed would be elicited on cross-examination. The conclusion that the incident was an attempt by A.J. to get attention was nothing more than a reasonable inference. A party is not entitled to a mistrial based on an opening statement outlining the admissible testimony of a witness. *Ashley v. State*, 310 Ark. 575, 840 S.W.2d 793 (1992). *Cf. Haight v. State*, 259 Ark. 478, 533 S.W.2d 510 (1976)(holding that a defendant's discussion of inadmissible plea-bargain discussions were prejudicial and warranted the granting of a mistrial).

Because we reverse and dismiss on this point, we need not reach Jaynes's second argument.

Reversed and dismissed.

JENNINGS and NEAL, JJ., agree.