Antwain WILLIAMS *v.* STATE of Arkansas

CR 07-457 268 S.W.3d 868

Supreme Court of Arkansas
Opinion delivered November 29, 2007

*Dunbar, Craytor & Morgan, LLP*, by: *Bart C. Craytor*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Leeann J. Irvin*, Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Antwain Williams brings this interlocutory appeal from the circuit court's denial of his motions to dismiss based on double jeopardy and based on the failure to provide a speedy trial as well as the circuit court's *sua sponte* declaration of a mistrial. We affirm the circuit court's order in part and dismiss in part.

On September 6, 2004, N.C., the alleged victim in this case, and her mother reported to local police in Texarkana that the appellant, Antwain Williams, had raped N.C. on the night of September 3, 2004. A warrant for Williams's arrest was issued, and Williams was arrested. On January 5, 2005, a criminal information was filed, charging Williams with one count of rape.

After several continuances, a trial date was set for August 21, 2006. On the day of the trial, *voir dire* was conducted by both parties, and a jury was selected but not sworn. The next day, the prosecutor became aware of a rape kit and clothing that had been taken from the victim after the rape. The rape kit had been stored in the Texarkana police evidence locker but had never been sent to the Arkansas State Crime Lab. Upon discovery, the evidence was immediately sent to the crime lab for testing, and the prosecutor

moved for a continuance to wait for the results from the crime lab. Williams filed an objection to the State's motion for continuance, arguing that the State had not acted with diligence in discovering and testing the rape kit and that allowing a continuance after the selection of a jury would be substantially unjust to the defense. The circuit court granted the State's motion, and the case was continued.

On December 27, 2006, the circuit court ordered a mistrial *sua sponte* on the basis that the results from the crime lab had yet to be completed, that the jury's term of service was nearing an end, and that the trial could not be resumed and completed within the jury's term of service. The circuit court noted that the jury, though selected, had not been sworn under oath, and, therefore, double jeopardy had not yet attached.

On February 2, 2007, Williams filed a motion to dismiss for denial of a speedy trial, a motion to dismiss due to double jeopardy, and an objection to the circuit court's declaration of a mistrial. Williams asked that the charges against him be dismissed with prejudice, or, in the alternative, that the circuit court withdraw its declaration of a mistrial and reinstate the previously selected jurors. A hearing was held on Williams's motion, after which the circuit court orally denied his motions from the bench. The circuit court ruled that Williams's right to a speedy trial had not been violated, as only 320 days could be counted against the State; that because the jury had not been sworn, double jeopardy had not attached; and finally that its declaration of a mistrial was proper because there was implied consent on the part of Williams and also that a mistrial was necessary because the jury had reached the end of its term of service. Williams filed this interlocutory appeal and asserted that the circuit court's denial of his motions was error.[1]

## I. Double Jeopardy

Williams first claims that double jeopardy should attach in this case because the jury had been selected by both parties and the ministerial act of administering an oath to the jury does little to

---

[1] Williams filed a notice of appeal on February 12, 2007. The circuit court did not enter a written order denying Williams's motions until March 29, 2007. According to Rule 2(b)(1) of the Arkansas Rules of Appellate Procedure – Criminal, "[a] notice of appeal filed after the trial court announces a decision but before the entry of the judgment or order shall be treated as filed on the day after the judgment or order is entered."

help protect his right to retain a chosen jury. He notes that he is not arguing that Arkansas Code Annotated § 5-1-112, which provides that double jeopardy attaches in a jury trial after the jury is sworn, is unconstitutional. Rather, he asserts that double jeopardy should attach when a mistrial is declared after the jury has been selected by both the prosecution and defense, notwithstanding § 5-1-112, as this section is independent of the constitutional protection against double jeopardy. Williams further urges that the mere withholding of the jury's oath should not govern whether double jeopardy attaches in a case, because such a standard does little to protect a defendant from the increased time and expense of his defense.

Williams goes further and contends that the State's continuance and the circuit court's subsequent declaration of a mistrial prejudiced his defense and violated his right to be tried by the selected jury. He states that a mistrial could have been prevented had the State acted diligently in having its evidence tested by the crime lab.

The State answers that Williams was not entitled to have his case tried by the selected jury and that his protection against double jeopardy was not violated. The State contends that § 5-1-112 governs this case and clearly provides that double jeopardy does not attach in a jury trial until after the jury is sworn. The State also maintains that Williams has misconstrued United States Supreme Court precedent to support his position and that because the jury was not sworn in this case, double jeopardy had not attached.

This court reviews a circuit court's denial of a motion to dismiss on double-jeopardy grounds *de novo. See Winkle v. State*, 366 Ark. 318, 235 S.W.3d 482 (2006). We have further said that "when the analysis presents itself as a mixed question of law and fact, the factual determinations made by the trial court are given due deference and are not reversed unless clearly erroneous." *Id.* at 320, 235 S.W.3d at 483. However, the ultimate decision by the circuit court that the defendant's protection against double jeopardy was not violated is reviewed *de novo*, with no deference given to the circuit court's determination. *Id.* A double-jeopardy claim may be raised by interlocutory appeal because if a defendant is illegally tried a second time, the right would have been forfeited. *See Zawodniak v. State*, 339 Ark. 66, 3 S.W.3d 292 (1999).

Both the Fifth Amendment to the United States Constitution and Article 2, § 8 of the Arkansas Constitution require that no person be twice put in jeopardy of life or liberty for the same

offense. The Double Jeopardy Clause protects criminal defendants from: "(1)a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *Hughes v. State*, 347 Ark. 696, 702, 66 S.W.3d 645, 648 (2002). The General Assembly has codified the protection against double jeopardy as an affirmative defense to criminal prosecution. *See* Ark. Code Ann. § 5-1-112 (Repl. 2006). The section relevant to the current case provides:

> A former prosecution is an affirmative defense to a subsequent prosecution for the same offense under any of the following circumstances:

> . . . .

> (3) The former prosecution was terminated without the express or implied consent of the defendant *after the jury was sworn* or, if trial was before the court, after the first witness was sworn, unless the termination was justified by overruling necessity.

(Emphasis added.)

 Williams's principal claim is that double jeopardy should have attached after the jury was selected but before the jury was sworn. We disagree. In addition to § 5-1-112, this court has held that "[d]ouble jeopardy attaches in a jury trial once the jury is sworn." *Phillips v. State*, 338 Ark. 209, 211, 992 S.W.2d 86, 88 (1999); *see also Smith v. State*, 307 Ark. 542, 545, 821 S.W.2d 774, 776 (1992) ("The law . . . is very clear that jeopardy does not attach until the jury has been sworn."). For his proposition that he has a right to be tried by a particular tribunal, Williams cites this court to *Crist v. Bretz*, 437 U.S. 28 (1978). His reliance on *Crist*, however, is misguided, as Williams simply quoted language in *Crist* out of context to support his argument. In *Crist*, 437 U.S. at 35, the United States Supreme Court said:

> Although it has thus long been established that jeopardy may attach in a criminal trial that ends inconclusively, the precise point at which jeopardy does attach in a jury trial might have been open to argument before this Court's decision in *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100. There the Court held that the Double Jeopardy Clause prevented a second prosecution of

a defendant whose first trial had ended just after the jury had been sworn and before any testimony had been taken. The Court thus necessarily pinpointed the stage in a jury trial when jeopardy attaches, and the *Downum* case has since been understood as explicit authority for the proposition that jeopardy attaches when the jury is empaneled and sworn.

(Internal citations omitted.) *See also Serfass v. United States*, 420 U.S. 377, 388 (1975) ("In the case of a jury trial, jeopardy attaches when a jury is empaneled and sworn."). In the instant case, it is undisputed that the jury, though selected, was not sworn. According to this court's previous decisions, as well as those by the United States Supreme Court, double jeopardy did not attach, and the circuit court correctly denied Williams's motion to dismiss based on double-jeopardy grounds. This point has no merit.

## II. Declaration of a Mistrial

Williams next contends that the circuit court erred in declaring a mistrial because no forceful and compelling circumstances existed to justify the dismissal of the jurors. He further maintains that reasonable diligence and care on the part of the State could have averted the circuit court's declaration of a mistrial. He urges, finally, that there was no implied consent on his part to the mistrial, and that if there was, it was because the State withheld the crime lab results and misled him.

The State's initial retort is that because the jury had not yet been sworn, double jeopardy did not attach, and, therefore, the trial had not commenced. Thus, according to the State, an analysis of Williams's consent or the necessity of the mistrial is not required, as there was not a trial, *per se*, to terminate. We disagree. Grounds for a mistrial could easily occur prior to the time that the petit jury is sworn. A prime example would be prejudice to the panel committed by improper comments made by counsel or other jurors during *voir dire*. *See generally Esmeyer v. State*, 325 Ark. 491, 930 S.W.2d 302 (1996); *Alexander v. State*, 264 Ark. 11, 569 S.W.2d 106 (1978); *Winbush v. State*, 82 Ark. App. 365, 107 S.W.3d 882 (2003).[2]

---

[2] In each of these cases, the circuit court's refusal to grant a mistrial following improper comments made during jury selection was affirmed on appeal. Though the cases differ from

The State, however, also insists that Williams implicitly consented to the declaration of the mistrial because he did not make a timely objection to the mistrial and because the mistrial was declared for his benefit. As a third point, the State contends that it exercised reasonable diligence and care and could not have taken any other action to prevent the mistrial. The State maintains that though the crime lab report was dated December 22, 2006, the prosecutor did not receive the report until January 29, 2007, and that the circumstances surrounding the mistrial were not within the control of the circuit court or any of the parties involved.

We initially emphasize that the circuit court has broad discretion in granting or denying a motion for a mistrial, and this court will not reverse the circuit court's decision absent an abuse of discretion. *See Holsombach v. State,* 368 Ark. 415, 246 S.W.3d 871 (2007). A defendant's consent to the declaration of a mistrial can be either express or implied. *See Phillips, supra.* If a defendant consents to a mistrial, then the demonstration of an overruling necessity is not required, and the defendant may be tried for the same charge again. *See id.* This court has held that the defendant's consent is implied if the defendant does not object to the mistrial, and the mistrial is for the benefit of the defendant. *See id; see also Woods v. State,* 287 Ark. 212, 697 S.W.2d 890 (1985). If the mistrial is for the benefit of the State, then the failure to object does not imply consent. *See id.*

In the case at hand, the mistrial was clearly for the benefit of Williams. The mistrial was declared because the jury was nearing the end of its term of service and the trial had not proceeded as scheduled. The circuit court stated its concern that the delay in time between the selection of the jury and the beginning of trial could possibly taint the jury. Furthermore, Williams did not object to the mistrial until he filed his motion to dismiss on February 2, 2007, more than five weeks after the mistrial was declared. Under these circumstances, we hold that Williams's consent to the mistrial was implied.

Moreover, the circuit court was also correct in alluding to the principle of overruling necessity for the mistrial. This court has said:

---

the instant case in that in these cases the circuit court refused to grant a mistrial, they stand for the proposition that a mistrial may be granted before a jury is sworn.

> In making this determination, we have said that the State bears the burden of proving a manifest necessity, which is a circumstance that is "forceful and compelling" and is "in the nature of a cause or emergency over which neither court nor attorney has control, or which could not have been averted by diligence and care." *Jones v. State*, 288 Ark. 162, 702 S.W.2d 799 (1986); *Cody v. State*, 237 Ark. 15, 371 S.W.2d 143 (1963). We have also said that it is within the trial court's discretion to determine whether there is an "overruling necessity" that requires the grant of a mistrial, and we will not disturb that ruling absent an abuse of discretion. *Shaw v. State*, 304 Ark. 381, 802 S.W.2d 468 (1991).

*Hale v. State*, 336 Ark. 345, 362, 985 S.W.2d 303, 312 (1999).

■ In the case at bar, the circuit court observed that it was concerned that the jury could have become tainted within the four months after selection of the jury and that there was a possibility that the jury could no longer be fair and impartial. Furthermore, the end of the jury's term of service was nearing, and the trial could not be completed by the end of the jury's term. The circuit court, accordingly, discharged the jury. These circumstances were not within the control of the circuit court or the prosecutor, as the prosecutor did not receive the crime lab results until almost a month after the declaration of the mistrial. We hold that the circuit court did not abuse its discretion in finding that the possibility of a tainted jury due to the delay in time between jury selection and the beginning of trial was an overruling necessity.

### III. Due Process

Williams next claims that his due-process rights were violated by the circuit court's *sua sponte* declaration of a mistrial, because the circuit court gave him no notice for a hearing and did not afford him an opportunity to be heard. He maintains that his interest in the selected jury was usurped and that he was further denied due process by the State's failure to give him the crime lab report in a timely manner. He insists that the circuit court's declaration of a mistrial without giving him an opportunity to be heard was an abuse of discretion.

■ We will not consider this point. Williams's argument in his brief consists of a mere two paragraphs of vague assertions that his due-process rights have been violated. He cites to no authority and makes no convincing arguments. Furthermore, we

cannot glean from the record that this precise point was ruled on by the circuit court. This court has said on numerous occasions that it will not consider arguments, even constitutional ones, that are not supported by legal authority or convincing argument and will not address arguments when it is not apparent without further research that the argument is well taken. *See Williams v. State*, 363 Ark. 395, 214 S.W.3d 829 (2005); *Flanagan v. State*, 368 Ark. 143, 243 S.W.3d 866 (2006). This court will not research and develop arguments for appellants. *See id.*

### *IV. Speedy Trial*

Williams raises, as his final point, that the circuit court erred in calculating the amount of time charged to the defense in its speedy-trial calculation. Specifically, he maintains that the time period between January 31, 2006, and May 2, 2006, should not have been charged to the defense. He contends that though he gave a verbal waiver during the January 31 hearing, the waiver was not accepted by the circuit court or relied upon in setting a trial date. Williams insists, in addition, that the time period between September 8, 2005, and January 31, 2006, should not have been charged to the defense because the continuance was requested based on the State's failure to provide photographs taken from the sexual assault nurse's examination. In sum, Williams argues that 236 days should be added to the circuit court's speedy-trial calculation.

The State responds that the denial of Williams's motion to dismiss for a speedy-trial violation is not properly before this court. The State insists that an interlocutory appeal is not the proper procedure for having this court address a speedy-trial issue. Rather, the State maintains that the proper method is by a petition for a writ of prohibition or on direct appeal and that, accordingly, this court should not consider Williams's argument.

We agree with the State. Rule 28.1 of the Arkansas Rules of Criminal Procedure provides:

> (c) Any defendant charged after October 1, 1987, in circuit court and held to bail, or otherwise lawfully set at liberty, . . . shall be entitled to have the charge dismissed with an absolute bar to prosecution if not brought to trial within twelve (12) months from the time provided in Rule 28.2, excluding only such periods of necessary delay as are authorized in Rule 28.3.

(d) Motion for dismissal of a charge pursuant to subsection (b) or (c) hereof shall be made to the trial court, but if denied, *may be presented to the Arkansas Supreme Court by petition for writ of prohibition.*

Ark. R. Crim. P. 28.1(c) and (d) (2007) (emphasis added). This court has said that "an interlocutory appeal is not the proper procedure for bringing a pretrial speedy-trial issue" before this court. *Richards v. State*, 338 Ark. 801, 803, 2 S.W.3d 766, 767 (1999). The proper method for having this court address the denial of a motion to dismiss for a speedy-trial violation before trial is by petition for writ of prohibition. *See Richards, supra.* We decline to address Williams's speedy-trial argument in this interlocutory appeal, and we dismiss Williams's appeal on this point.

Affirmed in part. Dismissed in part without prejudice.