SLIP OPINION



# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR–13–515

| | |
|---|---|
| LEWIS WAYNE TURNER<br>APPELLANT | Opinion Delivered DECEMBER 18, 2013 |
| V. | APPEAL FROM THE STONE COUNTY CIRCUIT COURT [NO. CR–2011–87] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE JOHN DAN KEMP, JUDGE |
| | AFFIRMED |

**DAVID M. GLOVER, Judge**

Charges against appellant Lewis Turner and his son, Rickey, were filed when marijuana was found growing on Lewis's farm. The cases against each of them for the offenses of manufacturing a controlled substance and possession of drug paraphernalia were consolidated and tried to a single jury on September 12–14, 2012, which after deliberation subsequently reported an impasse. Lewis moved for a mistrial, which was granted by the trial court. When the case was reset for trial, Lewis moved to dismiss, contending that a retrial was barred by the prohibition against double jeopardy and that the trial court had erred in declaring the earlier mistrial. The trial court denied the motion to dismiss, and this interlocutory appeal followed. We affirm.



*Background*

Jury deliberations began at 3:40 p.m. At 6:53 p.m., the jury was brought back into the courtroom after reporting an impasse. The foreman confirmed that he felt the jury had reached an impasse and reported the breakdown of the vote to be nine and three. The trial court gave the "dynamite" instruction, and the jury retired again at 7:08 p.m.

After a little more than an hour, the jury indicated they needed another break, and a ten-minute recess was taken. At 8:28 p.m., the jury was again brought into the courtroom, and the trial court asked if they were making any progress. The foreman reported, "We're still the same as we were." The trial court asked if any additional deliberation time would assist them in arriving at a verdict, and the foreman asked for thirty more minutes. At 8:29 p.m., the jury again retired to deliberate further.

At 9:01 p.m., the jury returned to the courtroom and reported that they had still not reached a verdict. The foreman stated that they had made some progress, that they were at eleven and one, but that he did not believe further deliberation would allow them to reach a verdict. The trial court asked if they recessed over the weekend and came back Monday morning would that assist them in reaching a verdict, or did he think they had gotten as far as they could go. The foreman said, "It's pretty much of an impasse."

The trial court instructed the attorneys to approach the bench and asked if they had any comment. Defense counsel for Lewis Turner said he had the impression that the jury had been deadlocked for a long time and that they would not reach a verdict; that he thought forcing the issue would create a problem; and that he thought he had to move for a mistrial.

Defense counsel for Rickey Turner stated that he agreed. The State pushed for more deliberation in light of the fact that the jury had made some movement. The trial court stated that it was going to reserve ruling on the defense motion for a mistrial and ask the jury to deliberate for another thirty minutes to see if they could make additional progress. The court stated that it would consider the motion again if the jury could not make progress in that time.

The court then told the jury to deliberate for another thirty minutes and see where they were. The jury returned to deliberate at 9:07 p.m. At 9:39 p.m., the jury returned to the courtroom, and the foreman reported that they had "made no progress what-so-ever." The trial court again called counsel to the bench and granted the motion for mistrial that had been earlier reserved for a ruling; the court and all counsel began immediately to try to work on a new trial date.

In open court, the trial judge explained to the jury that it was declaring a mistrial, discharging the jury, and setting a new trial date for December 5–7. As the jury was exiting the courtroom, the trial court asked the foreman, "now that you're discharged, . . . what was the breakdown for eleven for what and one for what?" The foreman responded, "Eleven for guilty for Rickey Turner and one not guilty. And we didn't make it to the other one." The trial court then asked if there was "[a]nything further today?" Counsel for the State and counsel for Rickey Turner responded that there was not.



*Interlocutory Appeal*

A double-jeopardy claim may be raised by interlocutory appeal because if a defendant is illegally tried a second time, the right would have been forfeited. *Williams v. State,* 371 Ark. 550, 268 S.W.3d 868 (2007).

*Standard of Review*

Our standard of review regarding a circuit court's denial of a motion to dismiss on double-jeopardy grounds is *de novo*. *Williams, supra*. The decision to order a mistrial and retry a criminal defendant lies within the sound discretion of the trial judge, and will be upheld absent an abuse of discretion. *Phillips v. State*, 338 Ark. 209, 992 S.W.2d 86 (1999).

*Mistrial and Double Jeopardy*

Lewis contends that the trial court erred in deciding that the jury was deadlocked regarding his case because the jury never deliberated his guilt or innocence at all, *i.e.*, that the trial court declared a mistrial based upon its erroneous determination that the jury was divided in opinion on Lewis's guilt, when in fact it was only Rickey's guilt or innocence that the jurors had considered. He argues that even though his counsel asked for a mistrial, it was the trial court's burden to determine if the jury was divided on his guilt or innocence. He relies in part upon article 2, section 8 of the Arkansas Constitution, which provides in pertinent part:

> [N]o person, for the same offense, shall be twice put in jeopardy of life or liberty; but if, in any criminal prosecution, *the jury be divided in opinion*, the court before which the trial shall be had, may, in its discretion, discharge the jury, and commit or bail the accused for trial, at the same or the next term of said court[.]

(Emphasis added.) He argues that this provision of the Arkansas Constitution "expressly



provides for a specific procedure and responsibility of the trial court in dismissing an empaneled jury which is 'divided in opinion,' [and] any other procedure which does not comport with that constitutional mandate should be invalidated." He concludes that "[a]bsent a finding that the jury is divided in opinion, the Court lacks jurisdiction to declare a mistrial," and that any "motion on the part of the defendants was no more than a request that the court fulfill its obligations under the Constitution."

With respect to his argument under the federal Constitution, he acknowledges that ordinarily a defense request for a mistrial waives any double-jeopardy claims, but he contends that the trial court's failure to fully inquire about the jury's considerations deprived counsel of needed information—amounting to "judicial error"— and that the grant of a mistrial under this case did not satisfy the "manifest necessity" standard of the federal Constitution because "the jury had not even considered guilt or innocence when it was dismissed."

Neither Lewis nor the State present us with Arkansas authority precisely addressing the argument presented here, which asserts that the Arkansas Constitution imposed a duty on the trial court to inquire further into the jury's report of an impasse to make certain that the impasse pertained to Lewis as well as Rickey. We have found none either. However, we are not persuaded that the constitutional language relied upon by Lewis imposes such an affirmative duty on the trial court when ruling on an express defense request for a mistrial. In addition, we have concluded that our cases providing an overall analysis of a double-jeopardy claim where a defense request for a mistrial is involved sufficiently address this admittedly unique situation.



For example, in *Phillips v. State*, our supreme court explained:

> We have long held that a defendant's consent to the termination of the trial can be either express or implied. *If the defendant's consent is evident, demonstration of an overruling necessity is not required in order to avoid the affirmative defense of double jeopardy.* . . . The court [in *Woods v. State*] also noted the statute and quoted the Commentary to that section which provides:
>
> *Express consent occurs when the defendant moves to terminate the trial or agrees to termination on motion of the court or the state.* The Model Penal Code declined to take a stand on whether mere failure to object to termination constitutes implied consent. Fortunately, the Arkansas Supreme Court has addressed the issue, developing what the Commission felt was a workable definition of implied consent. Consent is implied if the defendant fails to object to termination and the termination is for the benefit of the defendant. If the termination is for the benefit of the state, mere failure to object does not constitute consent.

338 Ark. at 212, 992 S.W.2d at 88–89 (emphasis added) (citations omitted). Arkansas Code Annotated section 5-1-112(3) (Repl. 2006) provides:

> A former prosecution is an affirmative defense to a subsequent prosecution for the same offense under any of the following circumstances:
>
> . . . .
>
> (3) The former prosecution was terminated without the express or implied consent of the defendant after the jury was sworn or, if trial was before the court, after the first witness was sworn, unless the termination was justified by overruling necessity.

(Emphasis added.)

Here, Lewis expressly requested the trial court to grant a mistrial. Under our case law, that request obviates the need to demonstrate an overruling necessity in order to avoid a claim of double jeopardy, and we are not convinced by Lewis's argument that the language of article 2, section 8 of the Arkansas Constitution imposes an affirmative duty on the trial court under the circumstances presented here.

The federal constitutional protections against double jeopardy are of no help to Lewis

either. In *Oregon v. Kennedy*, 456 U.S. 667 (1982), the Supreme Court of the United States explained that a "hung jury remains the prototypical example" of manifest necessity for a mistrial. "But in the case of a mistrial declared at the behest of the defendant, quite different principles come into play. Here the defendant himself has elected to terminate the proceedings against him, and the 'manifest necessity' standard has no place in the application of the Double Jeopardy Clause." *Id*. at 672–73. The narrow exceptions to the rule as discussed in *Kennedy, supra*, do not apply here.

In short, we hold that the trial court did not abuse its discretion in declaring a mistrial. Lewis has not provided us with any persuasive legal authority that the trial court had the obligation to make more definite inquiries of the jury before granting Lewis's motion for mistrial, and we do not find his Arkansas constitutional argument persuasive in light of the case law that explains clearly that if a defendant requests a mistrial, as was done here, the principles for granting it change dramatically. Similarly, we do not find his federal constitutional argument persuasive.

Affirmed.

WALMSLEY and VAUGHT, JJ., agree.

*Murphy, Thompson, Arnold, Skinner & Castleberry*, by: *Tom Thompson* and *Casey Castleberry*; and *Jeremy B. Lowrey*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.