Cite as 2019 Ark. App. 599

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CR-19-394

| | |
|---|---|
| | **Opinion Delivered**  December 11, 2019 |
| JORGE VASQUEZ-RAMIREZ | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, |
| APPELLANT | FORT SMITH DISTRICT [NO. 66FCR-18-345] |
| V. | HONORABLE STEPHEN TABOR, JUDGE |
| STATE OF ARKANSAS | AFFIRMED |
| APPELLEE | |

## LARRY D. VAUGHT, Judge

Appellant Jorge Vasquez-Ramirez filed this interlocutory appeal from the order of the Sebastian County Circuit Court denying his motion to dismiss on the basis of double jeopardy. Appellant contends that during his jury trial and after jeopardy attached, the circuit court abused its discretion when it sua sponte declared a mistrial without his consent and absent evidence of an overruling necessity. We affirm.

Appellant was charged with aggravated assault with a firearm and theft by receiving. His case was originally scheduled for a one-day jury trial on January 8, 2019, at 9:00 a.m. Because appellant and three witnesses, including the victim, Angel Bonilla, speak limited English, the circuit court requested and received confirmation on December 21, 2018, that interpreters would attend the trial. Thereafter, it was determined that a second day of trial

might be required. On January 7, the circuit court received a confirmation that interpreters would attend trial on January 8 and 9.

On Friday, January 4 at 4:34 p.m., appellant filed a motion to suppress. The court held a suppression hearing at 8:00 a.m. the morning of trial. The suppression hearing took longer than expected and was suspended while the parties selected the jury. Around 11:30 a.m., the court was informed that no interpreters were available for a second day of trial. The court advised the jury that the case would have to be finished in one day and that they may have to continue past 5:00 p.m. The jury broke for lunch while the parties resumed and completed the suppression hearing. The trial began around 1:00 p.m.

The State's first witness was Bonilla. During Bonilla's cross-examination, he fainted. When he was revived, he vomited in the witness box. This necessitated a break in the proceedings to care for and clean up after Bonilla. Around this time, the parties requested recesses to negotiate a plea. The negotiations were unsuccessful.

After Bonilla returned to cross-examination, the defense sought to impeach him with a cell-phone recording. When the court learned that the recording had not been translated or transcribed, the court stopped the proceedings, called the attorneys to the hall, and declared a mistrial. The court stated to the parties that it was just after 2:30 p.m. and that due to several unexpected and uncontrollable delays, it was apparent that the trial could not be finished in one day. The court explained that one delay was caused when Bonilla passed out and threw up in the witness box. The court explained that another delay occurred when the parties requested time to discuss plea negotiations. The court said a third delay was now required due to the disclosure by the defense of a recording to impeach Bonilla that required translation

2

and transcription. In addition to these unexpected delays, the court reminded the parties that they started the case at 8:00 a.m. and that they took a seventeen-minute lunch, yet they did not begin the trial until 1:00 p.m.; the parties were still questioning the first of seven witnesses; three of the witnesses required an interpreter, which doubles their testimony time; and the court learned at 11:30 a.m. that no interpreters were available for a second day of trial. The circuit court then advised the parties that its docket was full the rest of the week and the next week and that it was on vacation the following week. In reaching the decision to declare a mistrial, the circuit court stated that "we all fought the good fight and did the best we [could]" and that "if I felt like I had any other choice or any chance in the world of finishing this case today, we would." However, "this day . . . has been unlike anything I have ever seen in thirty-seven years of law practice . . . it's just a series of rotten breaks." The court concluded, "I feel like I have no alternative other than to order—direct a mistrial of this case because it cannot be completed in the time allotted for it due to unforeseen circumstances that have arisen during the course of trial." Appellant objected to the mistrial, and the court overruled the objection.

Thereafter, appellant filed a motion to dismiss the charges against him based on double jeopardy. He claimed that there was no overruling necessity to support the mistrial. The motion was denied by the circuit court in an order in which the court found that the trial schedule had to be adjusted to accommodate a hearing on a motion to suppress "filed by [appellant] at the eleventh hour";[1] voir dire by the defense was far greater in length and scope

---

[1] At a November 29, 2018 hearing on appellant's third motion for continuance, the circuit court advised his counsel that "[suppression] motions should have long since been

3

than is ordinary for a case of this type; the court was advised at 11:30 a.m. that interpreters would not be available the following day, and the court's docket would not allow the trial to be completed later in the week or in the next two weeks; an extensive recess was taken during trial to care for and clean up after the witness who fainted and vomited in the witness box; another extensive recess would have been required after the defense announced its intent to play a recording that had not been transcribed, translated from Spanish to English, or authenticated; multiple recesses were taken at the request of the parties to discuss settlement; and during trial, the court was advised that at least three of the seven witnesses scheduled to testify required an interpreter, which would double testimony time. The court further stated:

> At the conclusion of the second recess it should have been obvious to anyone that the case could not be completed in the time allowed due to the number of witnesses remaining to testify and the fact three of them required an interpreter, the fact counsel advised he was early in his cross-examination of the first witness, the amount of time that was taken to seat the jury, and the amount of time that would be required to instruct the jury and complete closing argument.

Finally, the court's order provides that it did not take the decision to declare a mistrial lightly and that "the series of events made it unavoidable in this case." This order is the subject of appellant's interlocutory appeal.[2]

---

filed." The court further instructed appellant's counsel, "[I]n the future, if you have a motion to suppress, file it early."

[2]A double-jeopardy claim may be raised by interlocutory appeal because if a defendant is illegally tried a second time, the right would have been forfeited. *Williams v. State*, 371 Ark. 550, 553, 268 S.W.3d 868, 871 (2007).

On appeal, appellant argues that the circuit court erred in denying his motion to dismiss.[3] We review a circuit court's denial of a motion to dismiss on double-jeopardy grounds de novo. *Williams v. State*, 371 Ark. 550, 553, 268 S.W.3d 868, 871 (2007).

Both the Fifth Amendment to the United States Constitution and article 2, section 8 of the Arkansas Constitution require that no person be twice put in jeopardy of life or liberty for the same offense. *Koster v. State*, 374 Ark. 74, 81, 286 S.W.3d 152, 159 (2008). This prohibition against a second prosecution for the same offense is further discussed in Arkansas Code Annotated section 5-1-112(3) (Repl. 2013): "A former prosecution is an affirmative defense to a subsequent prosecution for the same offense . . . [if][t]he former prosecution was terminated without the express or implied consent of the defendant after the jury was sworn . . . unless the termination was justified by overruling necessity." This means that once the jury is sworn, "jeopardy has attached . . . [and] the constitutional right against double jeopardy may be invoked except in cases of 'overruling necessity.'" *Jaynes v. State*, 66 Ark. App. 43, 46, 987 S.W.2d 751, 753 (1999) (citing *Green v. State*, 52 Ark. App. 244, 247, 917 S.W.2d 171, 172 (1996)).

The State bears the heavy burden of proving an overruling necessity, which is "a circumstance that is forceful and compelling and is in the nature of a cause or emergency over

---

[3]Appellant also argues that the circuit court abused its discretion in "inserting additional grounds" into its order denying his motion to dismiss that were not cited by the court when it declared the mistrial. However, he cites no authority for this argument, and we will not reverse when a point on appeal is unsupported by convincing arguments or sufficient citation to legal authority. *Devries v. State*, 2019 Ark. App. 478, at 6, 588 S.W.3d 139, 143. Moreover, appellant invited the circuit court's additional rationale when he filed a motion to dismiss that included his characterization of the trial proceedings, contended that there was no overruling necessity for the mistrial, and argued that jeopardy fully attached.

which neither court nor attorney has control, or which could not have been averted by diligence and care." *Shelton v. State*, 2009 Ark. 388, at 3, 326 S.W.3d 429, 432 (citing *Koster*, 374 Ark. at 82–83, 286 S.W.3d at 160). Determining whether there is an overruling necessity that requires the grant of a mistrial is a matter within the circuit court's discretion, and we will not disturb that ruling absent an abuse of discretion. *Id.* at 3–4, 326 S.W.3d at 432.

Arkansas appellate courts have recognized the difficulty of categorizing cases involving claims of double jeopardy and the resulting inadequacy of expounding any standard formula for guidance. *Jaynes*, 66 Ark. App. at 47, 987 S.W.2d at 754. Consequently, each case must turn largely on its own facts. *Id.*, 987 S.W.2d at 754. A circuit court's finding of overruling necessity has been upheld when the jury was exposed to matters outside the courtroom that could affect its judgment, *Koster*, *supra*; the defendant became ill and was unavailable for trial, *Hale v. State*, 336 Ark. 345, 985 S.W.2d 303 (1999); the jury was unable to reach a verdict and a juror became ill, *Shaw v. State*, 304 Ark. 381, 802 S.W.2d 468 (1991); a material witness for the State became ill, *Jones v. State*, 288 Ark. 162, 702 S.W.2d 799 (1986); the prosecutor failed to return to the trial after a lunch break due to suffering a mental breakdown, *Green v. State*, *supra*; and the defense counsel was found to be intoxicated, *Franklin & Reid v. State*, 251 Ark. 223, 471 S.W.2d 760 (1971).

The facts in the instant case do not fit precisely into any of the above fact patterns. Nevertheless, we likewise affirm the circuit court's declaration of a mistrial on the basis of an overruling necessity. In this case, the circuit court in its oral and written findings set forth nine unexpected and uncontrollable events that occurred on the day of trial that led it to conclude that the trial could not be completed that day: Bonilla's passing out and throwing up in the

6

witness box; the parties' plea negotiations; the defense's surprise disclosure of a recording that required translation and transcription; the unexpected notification that no interpreter was available the following day; seven witnesses were expected to testify, and at 2:30 p.m., the parties were still questioning the first witness; three of the seven witnesses required interpreter services, which extends testimony time; the docket was full the rest of the week and the next week, and the trial judge would be on vacation the following week; the defense's "eleventh-hour" motion to suppress required a hearing on the morning of trial; and the defense's extended length of voir dire.

Despite this extremely unusual and unexpected combination of events that unfolded at trial, the record is clear that the circuit court made every effort to conclude the trial. After learning that there were no interpreters available for a second day of trial, the circuit court advised the jury that the case would have to be finished in one day and that they might have to continue past 5:00 p.m. The court told the parties, "I am going to make the trains run on time today, because we have to get this case done today, so please be cognizant of the time." Before opening statements, the court advised the jury again that it would be moving things along due to the time constraint. After Bonilla passed out, the court stated, "I don't see how in the world we are going to finish this case today but we have no—we just need to soldier on. We just lost another 30 minutes, so, counsel, please be mindful of the time." During Bonilla's cross-examination, the court reminded the parties that "[w]e are on a time crunch." Throughout the trial, there were several other instances in which the court expressed its desire to complete the trial that day.

After having determined that the trial could not be concluded in one day, the circuit court also considered the effect on the jury of continuing the trial. The court found that it was unfair to leave the jury sworn for at least two and a half weeks in order to complete the second day of trial. *Hale*, 336 Ark. at 363, 985 S.W.2d at 312 (holding that circuit court did not abuse its discretion in declaring a mistrial when the defendant became ill and was unavailable for trial and the jury would have had to be sworn for over two months in a highly publicized trial). And finally, we note that the circuit court did not take the decision to declare a mistrial lightly. The circuit court expressed that it had not seen anything like this in thirty-seven years as an attorney and twelve years on the bench but felt compelled to declare a mistrial in light of the circumstances.

This type of case must turn largely on its own facts. *Jaynes*, 66 Ark. App. at 47, 987 S.W.2d at 754. Considering the combination of highly unusual and unexpected circumstances that took place outside the control of the court and the State, along with the court's obvious efforts in trying to complete the trial in one day and its superior position to determine whether that was possible under the particular circumstances of this case, we hold that the circuit court did not abuse its discretion in declaring a mistrial due to an overruling necessity.

We disagree with appellant's argument that the circuit court failed to use diligence and care in securing interpreters for trial. The record demonstrates that prior to trial on January 8, the circuit court had received confirmation that interpreter services would be provided both days of trial. We also disagree with appellant's argument that because it was only 2:30 p.m. when the circuit court declared the mistrial, it was still possible that the parties could have completed the trial that day if it continued after business hours, which the jury had indicated

8

a willingness to do. The record demonstrates as set forth herein that the court employed its discretion in determining that completion of the trial that day was not possible. On this issue, the court commented, "I am convinced at the pace of this case, we would be lucky to finish this case before the calendar turned to a new day."

Because we hold that the circuit court did not abuse its discretion in declaring a mistrial due to an overruling necessity, we further hold that retrial would not place appellant in jeopardy twice. *Koster*, 374 Ark. at 84, 286 S.W.3d at 161. We therefore affirm the denial of appellant's motion to dismiss on the basis of double jeopardy.[4]

Affirmed.

SWITZER and MURPHY, JJ., agree.

*Pirani Law PA*, by: *Tony Pirani*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.

---

[4]In addition to the arguments discussed above, appellant contends that the circuit court's mistrial deprives him of his "right to retain primary control over the course of his trial" and permits the State to gain an "advantage from what it learns at the first trial about the strengths of the defense case and the weakness of its own." Appellant further argues that he is entitled to "Redress of Wrongs" in this case. However, appellant failed to raise these arguments below; therefore, they are not preserved for appeal. Only those specific arguments raised below will be entertained on appeal, even those of constitutional dimension. *Newman v. State*, 2019 Ark. App. 38, at 6, 567 S.W.3d 110, 113.