Robert SHAW *v.* STATE of Arkansas
CR 90-283                                              802 S.W.2d 468
Supreme Court of Arkansas
Opinion delivered January 28, 1991

*William R. Simpson, Jr.*, Public Defender, *Jerry J. Sallings*, Deputy Public Defender, by: *Didi H. Sallings*, Deputy Public Defender, for appellant.

*Steve Clark*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Robert Shaw was tried on May 15, 1989, for attempted murder, rape, and kidnapping. He was acquitted of the attempted murder charge, and the trial judge declared a mistrial on the rape and kidnapping charges due to the inability of the jury to reach a verdict and the illness of one juror. Defense counsel did not object to the mistrial declaration at that time, but did file a motion to dismiss on double jeopardy grounds on October 24, 1989. The motion was denied.

On December 18, 1989, appellant was tried a second time on the rape and kidnapping charge. He was convicted of both offenses and sentenced to ten years for each conviction with the terms to run consecutively. Appellant appeals his convictions on two grounds: 1) the trial judge terminated the first trial prematurely and without the appellant's consent so that double jeopardy attached, and 2) the force used by Shaw in the rape was insufficient to warrant a separate conviction for kidnapping.

We affirm the conviction for rape and reverse the kidnapping conviction.

## Double Jeopardy

At the first trial on May 15, 1989, the jury began its deliberation at 6:05 p.m. and advised the judge at 9:30 p.m. that it had reached a verdict on one charge, but was split six to six and nine to three on the other two charges. The judge, in a lengthy statement, advised the jury that it needed to resolve the two remaining charges; he did not, however, specifically give the *Allen* instruction, AMCI 6004. In his statement to the jury the judge did say: "And if the issue still remains six and six then we'll just have to live with that." The judge also asked about the health of one juror, Mr. Brown, who answered that he had a prostate condition but was feeling better since he had "heaved a few times."

At 10:15 p.m. the jury was called back into the courtroom by the judge and asked about the status of its deliberations. The judge was told that the jury had "sort of come to a stop" and Mr. Brown was "having some problems." The judge then declared a mistrial on the two remaining charges. He was told that the one acquittal was on the attempted murder charge. The judge asked, after declaring a mistrial, what the status of the two remaining charges was. The foreman said eight jurors had voted not guilty and four jurors had voted guilty on rape, and ten jurors had voted not guilty and two jurors had voted guilty on kidnapping.

The decision to declare a mistrial due to a jury's inability to reach a verdict is discretionary with the trial judge, and that decision will stand absent abuse of discretion. *See McGirt* v. *State*, 289 Ark. 7, 708 S.W.2d 620 (1986). We are not prepared to say the trial judge abused his discretion in the instant case.

The law on double jeopardy is set out by statute:

A former prosecution is an affirmative defense to a subsequent prosecution for the same offense under any of the following circumstances:

* * * *

     (3)   The former prosecution was terminated without the express or implied consent of the defendant after the jury was sworn . . . unless the termination was justified by overruling necessity.

Ark. Code Ann. § 5-1-112 (1987).

There is evidence in this case of "overruling necessity." The jury had conferred for more than three hours without deciding the rape or kidnapping counts, and the foreman had said the jury "had sort of come to a stop." The judge had also previously urged the jury to resolve the remaining counts though he did not specifically give the *Allen* instruction.

Equally as important as the deadlocked jury was the condition of one juror, Mr. Brown, who was physically ill. After the jury returned to the jury room at 9:41 p.m., the judge said: "I just heard that Mr. Brown was white as a sheet and it gave me concern." When the jury came back in at 10:15 p.m., the foreman told the judge that the jury was still deadlocked on two charges and Mr. Brown was "having problems." At that point the judge declared a mistrial.

■   Under Arkansas law it is well settled that either a deadlocked jury or the illness of a juror is a circumstance which qualifies as "overruling necessity." *See Potter* v. *State*, 42 Ark. 29 (1883) (deadlocked jury); *Atkins* v. *State*, 16 Ark. 568 (1855) (illness of juror). The trial judge, who was in the best position to assess both circumstances, made his decision to declare a mistrial and the totality of the circumstances support that decision.

### Kidnapping

Appellant also contests his kidnapping conviction on the basis that the state's facts only show force associated with the rape offense and do not show independent restraint sufficient to justify an additional kidnapping conviction.

On this point appellant is persuasive, and the kidnapping conviction is reversed.

At trial, the state showed that appellant asked the victim for a date on March 10, 1989. The two agreed to have dinner after the

victim got off work at 4:30 on Friday afternoon, but instead of dinner the two went to a liquor store and purchased a fifth of whiskey and some soft drinks. They had a drink of whiskey and, on the pretense that appellant was going "to purchase a part," he drove the victim out into the country until they came to a camp site. There, they got out of the truck and turned on the radio for music. Somewhat later, appellant asked the victim if he could kiss her. She refused and he said that "he could just blow her head off and nobody'd ever find her." When appellant said that, the victim began to walk down the road. Appellant got back in his truck, drove up beside her, and apologized. She got back into the truck and lit a cigarette. Appellant drove down the road at a high rate of speed to a dead end and told her to get out of the truck. At that point he pulled out a gun, and she fell to her knees. Appellant struck her in the face and made her stand up and take off her clothes. He then raped her on the tailgate of the truck.

Following the rape, the victim got back in the truck on her own volition, because she thought appellant was going to take her home. Appellant, however, ordered her out of the truck, according to the victim's testimony, "so that he could get away before I went and squealed to the cops." The victim then told appellant she knew he was going to kill her. She got out of the truck and ran into the woods with appellant firing at least one shot in her direction. Appellant may have followed her after this, but the victim by her own admission was hysterical.

To prove kidnapping the state must show that the offender has restrained another person so as to interfere substantially with her liberty with the purpose of engaging in sexual intercourse. Ark. Code Ann. § 5-11-102. Here, there was no substantial interference with liberty to warrant a separate conviction for kidnapping. By the victim's own testimony her actions were consensual until appellant pulled a gun and forced her to take off her clothes.

These facts are distinguishable from those in a recent kidnapping case decided by this court. *Cozzaglio* v. *State*, 289 Ark. 33, 709 S.W.2d 70 (1986). There, the victim was pulled into a car and driven to a different county where she was raped. En route, the victim was forced to commit oral sex. The forceable abduction and the extent of the travel over a period of time fall

more readily into the category of kidnapping than the facts in the instant case. The same holds true of the fact situation in a second recent case. *See Vick* v. *State*, 301 Ark. 296, 783 S.W.2d 365 (1990). In *Vick*, the victim was held overnight and raped several times, which again distinguishes it from the facts in the instant case due to the period of time that the victim was restrained.

Here, the force began with the gun threat after appellant drove the truck to the dead end. The rape immediately ensued, after which the victim got back in the truck voluntarily. She got out of the truck only at appellant's insistence and what transpires from that point forward is more suggestive of attempted murder — a charge for which appellant was acquitted — than kidnapping.

The restraint used in this case did not exceed restraint or force incident to the crime of rape. *See Summerlin* v. *State*, 296 Ark. 347, 756 S.W.2d 908 (1988). The evidence is therefore insufficient to sustain a kidnapping conviction.

Affirmed in part; reversed and dismissed in part.

HAYS, GLAZE and CORBIN, JJ., dissent in part.

STEELE HAYS, dissenting in part. The issue is whether the evidence sustains appellant's conviction for the crime of kidnapping independently of rape. The facts, in capsule, are these: The appellant drove the victim into the woods, taking along a pistol; at the first rebuff of his advances he told her, "I could blow you away and nobody would ever know it." Indignant or frightened, or both, she walked away; the appellant followed and coaxed her back into the truck on assurances of good behavior only to then drive at high speed to a dead-end road, where he ordered her out, forced her to disrobe, and raped her on the tailgate of the truck. Finally, told to leave, she heard him fire a shot in her direction as she fled into the woods.

Granted, the victim's presence was initially consensual, as the majority opinion notes, but she reentered the truck on assurances of proper conduct,which were promptly breached, and from that point, at least, there was a substantial interference with her liberty to a further point in time and distance where the rape occurred. I submit those facts constitute separate crimes of rape and kidnapping. Ark. Code Ann. § 5-11-102 (1987); *Cook* v.

*State*, 284 Ark. 333, 681 S.W.2d 378 (1984). The judgment should be affirmed without modification.

GLAZE, J., joins in dissent.

CORBIN, J., joins.

TOM GLAZE, Justice, dissenting in part. I dissent on the court's kidnapping holding. The majority court seems to premise its decision on the kidnapping conviction on the fact that she consented to being present on a gravel road in a rural area, where the rape took place. Such a conclusion is contrary to the facts, as I read them.

In viewing the evidence in the state's favor, as this court is required to do, the facts show the appellant met the victim and during conversation, he offered to help get her a job at twice what she was making. He called her later and asked to take her to dinner so they could talk about the job. Subsequently, appellant picked up the victim at a bowling alley. He then drove to a liquor store where he bought liquor and cokes and made a telephone call. After his call, he said, "Work, work, I've always got to work." Appellant then said that he had to go somewhere and pick up something. He then went to the highway and drove "a long way" and ended up in a forest and campsite where he stopped. Appellant asked the victim if he could kiss her, and she said no, she had a boyfriend. After the victim rejected appellant's advances, he said that he could blow off appellant's head and nobody would find her. The victim departed the truck and walked down the road in the direction from which they came. At this time, it was getting dark. Appellant pulled his truck alongside the victim and said he was sorry, and she should get in the truck because there were wild animals in the area. She got back in appellant's vehicle. Appellant, after driving a short distance still in the rural area, stopped his vehicle and ordered the victim out. He got out, pulled a gun and told the victim to take off her clothes. He hit the victim in the face and then she undressed. He then raped her on the tailgate of the appellant's truck.

From the above, the jury could have formed the opinion that the victim intended to talk to appellant over dinner about a job, but the appellant's intentions were to have sex with her. Appellant, by lying about work necessitating him to pick up something,

388

drove to a rural and deserted area where he raped the victim.

Contrary to the majority's conclusion, the victim never consented to anything the appellant did from the point after she met him and went to a liquor store. Thereafter, everything else that took place was a part of appellant's stealthy means to place his victim in a setting where he could rape her.

As we said in *Summerlin* v. *State*, 296 Ark. 347, 756 S.W.2d 908 (1988), a person commits the offense of kidnapping if, without consent, he restrains another person so as to interfere substantially with her liberty with the purpose (in this case) of engaging in sexual intercourse with him. *See also Cook* v. *State*, 284 Ark. 333, 681 S.W.2d 378 (1984). Here, appellant took the victim into a forest area at night, ordered her out of his truck, pulled a gun, hit her, ordered her to take off her clothes and raped her. If substantial interference was not imposed on the victim's liberty in these circumstances, it is difficult to know how such interference with one's liberty can ever be shown. Not only was she, without her consent, placed in a setting where she could not get away but also he hit her and then pulled his gun to further restrain her so he could perform the rape. In sum, I am of the view that the restraint used by the appellant far exceeded the restraint normally incident to the crime of rape. *Summerlin*, 296 Ark. 347, 756 S.W.2d 908.

HAYS AND CORBIN, JJ., join this dissent.