2009 Ark. 388

**Glen Homer SHELTON, Jr., Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 08–1035.**

Supreme Court of Arkansas.

June 25, 2009.

P.—Crim. 4 has since been amended to include the time for filing the record.

J. Thomas Sullivan, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Deborah Nolan Gore, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice.

Appellant, Glen Homer Shelton, Jr., filed this interlocutory appeal from the order of the Jefferson County Circuit Court denying his plea of prior jeopardy, in which he had moved for dismissal of the capital-murder charge pending against

him. This interlocutory appeal requires our interpretation of the Arkansas Constitution, therefore, jurisdiction is properly in this court pursuant to Ark. Sup.Ct. R. 1–2(a)(*l*). We find merit to Appellant's argument that there was no overruling necessity to support the trial court's granting of a mistrial, and therefore conclude the trial court erred in denying Appellant's plea of prior jeopardy. Accordingly, we reverse and dismiss.

Appellant was charged by felony information with the May 5, 2007 murder of Melanie Hughes, after Hughes was run over by a tractor driven by Appellant. Trial by jury began on February 19, 2008. After a jury was selected and sworn, both sides presented opening statements. At the conclusion of Appellant's opening statement, the State moved for a ₂mistrial based on comments made by defense counsel during opening statement that the State alleged amounted to a change in defense theories. The trial court granted the State's motion for mistrial over Appellant's objection and discharged the jury. The trial court then reset the case for jury trial and denied Appellant's motion to set bond.

■ Appellant filed a plea of prior jeopardy and moved to dismiss the charges pending against him. After a hearing on May 8, 2008, the trial court took the matter under advisement and ultimately issued a written order denying without explanation Appellant's plea of prior jeopardy. This interlocutory appeal followed.[1] An order denying a motion to dismiss charges because of double jeopardy is an appealable decision. *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *Smith v. State*, 307 Ark. 542, 821 S.W.2d 774 (1992); *Jones v. State*, 230 Ark. 18, 320 S.W.2d 645 (1959).

■ This court reviews de novo a circuit court's denial of a motion to dismiss on double-jeopardy grounds. *Koster v. State*, 374 Ark. 74, 286 S.W.3d 152 (2008). When the analysis presents itself as a mixed question of law and fact, the factual determinations made by the circuit court are given due deference and are not reversed unless clearly erroneous. *Id.* However, the ultimate decision by the circuit court that the defendant's protection against ₃double jeopardy was not violated is reviewed de novo, with no deference given to the circuit court's determination. *Id.*

■ Although raised as his second assignment of error, we first address Appellant's argument that the circuit court erred under Arkansas law in ordering a mistrial because of comments made by defense counsel during opening statement. At the outset we note that article 2, section 8, of the Arkansas Constitution provides that

> no person be twice put in jeopardy of life or liberty for the same offense. *See Williams* [*v. State*, 371 Ark. 550, 268 S.W.3d 868 (2007)]. The Double Jeopardy Clause protects criminal defendants from: "(1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *Hughes v. State*, 347 Ark. 696, 702, 66 S.W.3d 645, 648 (2002).

> "A former prosecution is an affirmative defense to a subsequent prosecution for the same offense . . . [if] [t]he former prosecution was terminated without the express or implied consent of the defendant after the jury was sworn . . . unless

---

1. This appeal was previously submitted to us and we ordered rebriefing due to addendum and abstract deficiencies. *Shelton v. State*, 2009 Ark. 165, 301 S.W.3d 467 (per curiam). Appellant has cured those deficiencies in his substituted brief.

the termination was justified by *overruling necessity*." Ark.Code Ann. § 5–1–112(3) (Repl.2006) (emphasis added). *Koster*, 374 Ark. at 81–82, 286 S.W.3d at 159–60.

In the instant case, Appellant specifically contends that there was no overruling necessity to grant the mistrial as required by section 5–1–112(3). It is undisputed that the State bears the heavy burden of proving an overruling necessity, which is a circumstance that is forceful and compelling and is in the nature of a cause or emergency over which neither court nor attorney has control, or which could not have been averted by diligence and care. *Koster*, 374 Ark. 74, 286 S.W.3d 152. Determining whether there is an overruling necessity that requires the grant of a mistrial is a matter within the trial court's discretion, and we will not disturb that ruling absent an abuse of discretion. *Id.*

In *Koster*, this court affirmed a finding of overruling necessity when the jury was exposed to matters outside the courtroom that could affect its judgment in the case. Other examples of overruling necessity found by this court are illness of a juror, *Shaw v. State*, 304 Ark. 381, 802 S.W.2d 468 (1991); illness of a material witness for the State, *Jones v. State*, 288 Ark. 162, 702 S.W.2d 799 (1986); and intoxication of defense counsel, *Franklin v. State*, 251 Ark. 223, 471 S.W.2d 760 (1971). These are all examples of emergencies that are outside the control of the court and counsel, that could not have been averted with diligence or care, and that prevented the trial from proceeding.

The situation presented in the present case, however, is entirely distinct from those cases, as a review of the record below clearly demonstrates. At the core of this case are remarks of defense counsel made during opening statement regarding evidence that the prosecuting attorney had already explained to the jury would be admitted at trial. Indeed, the first reference to the challenged subject matter of the victim's death being accidental was, in fact, made by the prosecution in its opening statement:

> You'll also hear that once the defendant to the—to the sheriff's office that he was advised of his rights and that he gave a statement. And I anticipate that you're going to see that statement. It was a video statement where he gives explanation as to what was involved and why—what happened happened. And in that statement, I anticipate you're going to hear several different explanations that range from being mad to range from she had my cell phone to range that *it was an accident* to, "I just meant to bump her, but I didn't mean to kill her." Several different explanations.

(Emphasis added.) Defense counsel then proceeded with his opening statement, describing the events leading up to the death of Hughes:

> Ms. Hughes, Glen will tell you, was between the car and the tractor when she fired the first three shots. He couldn't go toward the car. He couldn't go toward the school bus that he lived in because that would have been running in the direction of the woman who was firing the gun at him. He runs to the tractor and gets in the tractor. And as he's in the tractor, she fires at least one more shot, according to Glen.
>
> . . . .
>
> The testimony will show he did not have a gun, he did not have a knife, *he didn't have anything else he could use as a weapon to defend himself He drove the tractor.*
>
> Ms. Hughes starts to run up toward the highway as he's following behind her. Periodically Glen will tell you that

she turned around. He kept going. She kept running. As he chases her finally off the property where he lives, his tractor hits part of the ditch, I'll call it, and Glen is going to tell you that *there was a momentary loss of control. And before he could bring that tractor back under control,* he had run over Melanie Hughes.

(Emphasis added.) Defense counsel went on to assert that the evidence would show that Appellant acted in self-defense:

If you look at the evidence, beginning in 2004 when Glen has it in his mind that she will assault him and she will hurt him and combine that with the evidence in 2007 when this time she has a gun and she fires it, we think you'll be satisfied that *he was acting in self-defense when he got in that tractor.* Thank you.

(Emphasis added.)

At the conclusion of Appellant's opening statement, the State moved for a mistrial, arguing that defense counsel's remarks about momentary loss of control amounted to a change in defense theories from one of self-defense to one of accident, and that prejudice resulted therefrom because the jury had now heard comments about the victim's use of drugs and her previous attack on Appellant's neck and face with a knife. The State conceded the admissibility of this evidence prior to trial and asserts that if it had known that Appellant was proceeding under a theory of accident, it would not have done so, and that the jury was therefore prejudiced by hearing in opening statement that such evidence would be forthcoming at trial. Appellant's counsel responded to the State's motion by telling the trial court that

[t]he defense is self-defense. And [the prosecuting attorney], I believe, said that [Appellant] offered several examples of reasons for why his conduct oc-

curred and that it was an accident at some point when he ran over her.... [A]nd that's all I did was repeat them, that it was an accident at that point. *But we're still arguing self-defense ....* Now, it may be ultimately determined by the jury that it's an imperfect self-defense claim in which reckless conduct or negligent conduct is determined by the jury. *But in no way has our defense changed to accident. Our defense is clearly self-defense.*

(Emphasis added.)

The State continued to argue to the trial court that mistrial was the only appropriate remedy here. When questioned further by the court, Appellant's counsel responded that

[i]t could be imperfect self-defense if they think he was acting with a reckless mental state at that point.

I mean, *I'll be glad to go back and clarify to the jury ... that this is not an accident, accidental killing; and the defense is relying on self-defense.* It doesn't matter to me how it's done. I'll be glad to do it.

(Emphasis added.) Defense counsel, all the while asserting that he was proceeding under a theory of self-defense, again offered to clarify for the jury that Appellant was relying on a defense of self-defense. Defense counsel further averred that the court could clarify the situation to the jury or instruct the jury that comments made by counsel in opening statements are not to be considered as evidence.

After considering the law on imperfect self-defense cited by Appellant, *Harshaw v. State,* 344 Ark. 129, 39 S.W.3d 753 (2001), the trial court granted the State's motion for mistrial on the grounds that *Harshaw* and the concept of imperfect self-defense were not applicable to the facts presented and that defense counsel's

remarks were not curable via an admonition or jury instruction.[2] While the trial court acted with deliberation and consideration, it nevertheless made a manifestly incorrect decision that is reversible as an abuse of discretion in that regard.

The State has not met its heavy burden of demonstrating that the mistrial was warranted by circumstances justifying overruling necessity, because if any error or prejudice occurred in this case it could have been corrected with curative relief such as an admonition or instruction to the jury. A mistrial is an extreme remedy that should only be granted when the error is beyond repair and cannot be corrected by any curative relief. *Weaver v. State*, 324 Ark. 290, 920 S.W.2d 491 (1996). There was no forceful or compelling emergency such as illness or incapacitation of a juror, counsel, judge, or witness that would make it impossible to proceed with the trial. There was no exposure to the jury of matters outside the courtroom. Therefore, there was no overruling necessity warranting a mistrial.

Because the trial court granted a mistrial over Appellant's objection and without his express or implied consent, and because there was no manifest or overruling necessity that justified the mistrial, the double jeopardy provision of the Arkansas Constitution precludes any subsequent attempt at prosecuting Appellant. Accordingly, we reverse and dismiss the order denying the plea of prior jeopardy, and we need not consider Appellant's remaining arguments for reversal.

Reversed and dismissed.

GUNTER, J., dissents.

JIM GUNTER, Justice, dissenting.

The majority has concluded that there was no overruling necessity for a mistrial; thus the trial court erred in granting the mistrial, and any subsequent prosecution is barred. The majority bases this conclusion on the finding that, if any error or prejudice resulted from defense counsel's remarks during opening statements, such prejudice could have been corrected with curative relief such as an admonition or instruction to the jury. I cannot agree with this conclusion and must, therefore, respectfully dissent.

First, a more detailed recitation of the facts leading up to trial is relevant. Prior to trial, the State filed a motion in limine seeking to exclude certain evidence pertaining to the victim, including the victim's autopsy report showing a blood-alcohol level of .15 and the presence of methamphetamine, the victim's prior use of drugs, and prior violent conduct of the victim toward appellant, namely cutting him with a knife approximately a year and a half earlier. At a hearing on the motion, the State asserted that, to its knowledge, the defense had not pled self-defense and noted its belief that the defense would be accident. The State also indicated that, if the justification defense was used, that would change some of the State's arguments and some of the contested evidence would be relevant. The defense unequivocally stated that it was going to use a justification defense, so the State conceded that, under a justification defense, the victim's drug use at the time and her prior violent act toward appellant were relevant.

---

**2.** We note that the trial court never made an express ruling on the issue of overruling necessity. It did, however, rule on the motion for mistrial and on the motion to dismiss on prior jeopardy grounds. The United States Supreme Court has ruled that a trial court's failure to make an express finding of manifest necessity when granting a mistrial does not preclude the issue from their review on collateral attack. *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978).

At trial, during its opening statement, the State opted to pre-empt the defense's introduction of this character evidence regarding the victim and informed the jury that it would hear evidence of the victim's drug use, both in her past and the day of her death, and evidence of the victim's prior assault with a knife. The State also, as the majority explains, referenced the various explanations for the victim's death given to the police by appellant, including that her death was an accident. Defense counsel then proceeded as described by the majority, with counsel characterizing the victim's death as occurring during a "momentary loss of control." In its motion for mistrial, the State argued that, by explaining the victim's death in this way, the defense had essentially asserted accident as a defense, not justification, and that had the State known accident would be the asserted defense, it would have opposed, rather than conceded, the admission of the character evidence regarding the victim.

The majority characterizes the "core" of this case as a dispute over "remarks of defense counsel made during opening statements regarding evidence the prosecuting attorney had already explained to the jury would be admitted at trial." However, the reference to accident, which I assume is to what the majority refers, was not the basis for the mistrial in and of itself; the necessity for a mistrial resulted from the references during voir dire and the State's opening statement to negative character evidence of the victim, which would not have been mentioned by the State if not for the defense's representation that self-defense was its theory of defense, and the resulting prejudice to the State due to the inability to undo the jury's knowledge of this evidence.[1]

The trial court, in explaining its grant of a mistrial, explained:

What we have here is saying, you know, he had decided to use deadly force. He's following her off the property and then he loses control and so, suddenly it's an accident. I don't think the way it was presented it can be either an—it's got to either be an accident or it has to be intentional. It can't be left up for the jury, in the Court's opinion.

So, based on that, based on the statement, I've also [taken] a couple of extra minutes to try to figure out a way to admonish the jury. I know the Model instructions say opening statements are not evidence, not to be considered by the jury. But after we've gone on through two hours of voir dire, through the State's opening, and then we get down to the end and say, "Well, he lost control and ran over her," I don't think there's any way to cure that. So I'm going to grant the State's motion. I'm going to grant a mistrial in this case.

In other words, the trial court found there was an overruling necessity for the grant

---

1. The majority also notes that the first reference to the victim's death being accidental was made by the prosecution, alluding to appellant's argument on appeal that the prosecution had "opened the door" to any mention of an accident. It is true that appellant's video-taped statement to the police, during which he provided several explanations as to what had occurred, was no doubt admissible and quite possibly would have been admitted by the State as evidence of guilt. *See Martin v. State*, 346 Ark. 198, 57 S.W.3d 136 (2001) (finding that the jury could have considered the defendant's inconsistent and conflicting statements as evidence of guilt). But I cannot agree that merely telling the jury that appellant had previously given the police several explanations for the incident, including that the victim's death was an accident, somehow "opened the door" for appellant to assert accident as his theory of defense after unequivocally stating to the court and the prosecutor that his defensive theory at trial would be self-defense.

of a mistrial, and this court should reverse such a ruling only when there has been an abuse of discretion. *Koster v. State*, 374 Ark. 74, 286 S.W.3d 152 (2008). The majority does not ₁₂decide whether a change of defense had occurred but instead finds that if any error or prejudice did occur, an admonishment or jury instruction would have been sufficient curative relief. In my opinion, this decision amounts to a second-guessing of what is essentially a judgment call by the trial court, which does not comport to the deference that should be given to the trial court in such a situation. This court has held numerous times that the trial court is in the best position to decide the issue of prejudice because of its first-hand observation. *Jackson v. State*, 368 Ark. 610, 249 S.W.3d 127 (2007); *Davis v. State*, 365 Ark. 634, 232 S.W.3d 476 (2006); *Barr v. State*, 336 Ark. 220, 984 S.W.2d 792 (1999). In addition, in a case factually similar to the case at bar, the United States Supreme Court stated:

> We recognize that the extent of the possible bias cannot be measured, and that the District Court was quite correct in believing that some trial judges might have proceeded with the trial after giving the jury appropriate cautionary instructions. In a strict, literal sense, the mistrial was not "necessary." Nevertheless, the overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment.

*Arizona v. Washington*, 434 U.S. 497, 511, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). Likewise, I would accord a great deal of deference to the trial court's determination that a mistrial was necessary in this case and would therefore affirm the denial of appellant's plea of prior jeopardy. For this reason, I respectfully dissent.