Cite as 2025 Ark. App. 23

# ARKANSAS COURT OF APPEALS
## DIVISIONS I & II
### No. CR-24-237

| | |
|---|---|
| KENTRELL SIMS <br><br> APPELLANT <br><br> V. <br><br> STATE OF ARKANSAS <br><br> APPELLEE | Opinion Delivered January 22, 2025 <br><br> APPEAL FROM THE ARKANSAS COUNTY CIRCUIT COURT, NORTHERN DISTRICT [NO. 01SCR-19-264] <br><br> HONORABLE DONNA GALLOWAY, JUDGE <br><br> AFFIRMED |

**ROBERT J. GLADWIN, Judge**

Appellant Kentrell Sims ("Sims") appeals the Arkansas County Circuit Court's denial of his motion to dismiss based on double jeopardy. Specifically, Sims argues on appeal that there was no overruling necessity for the circuit court to grant a mistrial and that an admonition would have cured any potential prejudice caused by the testimony in question; thus, he contends that the denial of his motion to dismiss must be reversed and the case dismissed. We affirm.

I. *Background Facts*

Sims was charged with one count of rape committed against Morgan Suchan ("Suchan") on December 31, 2019. The case proceeded to a jury trial on March 17, 2023. At trial, Suchan testified that she and Sims were introduced through her friend, Ashley Artis

("Artis"), on a three-way telephone call that took place on July 13, 2019. Suchan testified that she and Sims spent the afternoon talking and texting and then agreed to meet. Sims arranged for his cousin to drive him to Suchan's aunt's house to pick her up, and then Sims's cousin drove them to his apartment and dropped them off. Suchan stated that she and Sims sat on the couch and talked and that she told Sims that she did not want to have sex with him. Suchan testified that Sims then asked her to come up to the bedroom, and she did, adding, "I was naïve, I didn't think anything was going to happen." Suchan sat on the bed and Sims sat next to her and started kissing her neck, and she testified the kissing on her neck didn't bother her. However, she claimed that Sims got on top of her and pulled her dress up, and she once again told him she did not want to have sex. Suchan testified that Sims then "starts kind of . . . dry humping [her]" and then "proceeded to pull [her] panties to the side" using his fingers. She testified that she told him to stop and get off "several times" but that Sims did not listen and also ignored her statement that his belt was hurting her.

Suchan told the jury that Sims then removed his shorts, pulled his boxers to the side, and raped her. She explained that she was "terrified" and "scared that anything could happen," so she just "kind of laid there" and stayed quiet. Suchan stated that afterward, Sims got up and went to the bathroom and then returned to the bedroom and "[a]cted like nothing happened, like I didn't tell him I didn't want to have sex." About five minutes later, Suchan said that Sims's cousin came back to the house, picked both of them up, and drove Suchan back to her aunt's house. Suchan testified that almost immediately upon returning

2

to her aunt's house, she broke down crying, called her best friend, and told her aunt what happened with Sims. Thereafter, Suchan's friend took her to the emergency room. While at the hospital, she spoke to Officer Campbell and Detective Watson and told them about the incident with Sims. As a result, the State charged Sims with rape.

At trial, the defense called its first witness, Artis, who testified about how she introduced Suchan to Sims. By agreement of the parties, Artis testified via Zoom, and defense counsel noted that there was a "lag" between question and response because of the Zoom setup. Artis testified that she worked at Burger King with Suchan for about a year and that she knew Sims from "around." Artis recalled that she introduced Sims to Suchan, and defense counsel asked, "[W]hy did you connect him?" Artis replied, "Suchan said that she was looking for a friend." Then defense counsel asked, "[S]pecifically, do you know what . . . she was looking for?" The State immediately objected on hearsay grounds, and before the circuit court could rule on the objection or instruct Artis to wait, she replied, "Someone to have sex with."

During a lengthy bench conference, defense counsel alleged that his question did not call for inadmissible hearsay, and even if it did, the answer was not offered for the truth of the matter asserted but to show the context of why Artis connected Sims with Suchan. Defense counsel then argued that the testimony fell under the present-sense-impression exception and was being offered for the listener and the jury to get a "full picture." The State told the circuit court that its willingness to agree to Artis's testifying via Zoom was the defense team's assurance that "all [Artis] was going to talk about was . . . the phone conversation"

3

and that her testimony had gone far beyond that. Defense counsel replied, "[T]hat's not what I said via email," and "I said [Artis] was the person that connected them, and that's what we were going to talk about." Additionally, defense counsel added that they were not "trying to be slick or sly," and in fact, they did not "want to go deeper into what [Artis] actually has said" because, according to counsel, Artis indicated that when she and Suchan were working together at Wendy's, Suchan "was all out the window trying to get with any man that was there." The State advised that such testimony would violate the rape-shield law, and defense counsel responded, "[T]hat's why I have not gone into any of that."

The State indicated it was leaning toward asking for a mistrial, and defense counsel offered to withdraw the question. The State argued that it was too late and that "the bell's been rung" because the whole trial had been about consent, or lack thereof. The defense urged that any prejudice caused by Artis's testimony could be cured with an admonition for the jury to disregard the statement. Thereafter, the court observed that the use of Zoom for the witness testimony largely contributed to the situation because it was not able to respond to the objection before the witness "blurt[ed] out information." Defense counsel reiterated that the State had already put on five witnesses who testified "that this was non-consensual," and this one statement did not destroy everything those witnesses testified to.

After a break, the State reiterated its position, stating that it believed the testimony was extremely prejudicial and could not think of any admonition the court could give the jury to correct the error that would not cause more harm; thus, the State formally moved for a mistrial. Defense counsel maintained that a mistrial was not warranted and opined that

4

the jury might not have heard Artis's testimony because there was "so much talking going on." The State disagreed and replied that two of the jurors laughed when they heard Artis's answer. Defense counsel continued to argue that the statement was not offered for the truth of the matter asserted.

The circuit court ultimately ruled that defense counsel's question called for a hearsay response, no exception applied, and the statement was highly prejudicial to the State's entire case; therefore, it could not be cured with a jury admonishment. Furthermore, the court noted its concern with how long the court and counsel had spent in discussion about the situation and the significance the jury might attach to the statement as a result thereof. Accordingly, the court granted the mistrial, over Sims's objection, and the jury was released.

On December 27, 2023, Sims filed a motion to dismiss based on double jeopardy after the State moved to retry Sims for the alleged rape. Sims argued there was no overruling necessity for the circuit court to have granted the mistrial and that an admonition would have cured any potential prejudice. Moreover, Sims argued that the testimony at issue was not hearsay, but even if it was, a mistrial was not necessary. On February 6, 2024, the circuit court held a hearing on Sims's motion to dismiss. Sims maintained that the case had to be dismissed on the basis of double jeopardy pursuant to Arkansas Code Annotated section 5-1-112(3) (Repl. 2013) and that the testimony was not hearsay because it was offered to show the basis of action as outlined in *Dandridge v. State*, 292 Ark. 40, 727 S.W.2d 851 (1987).

At the hearing, the court noted that the fact it heard a juror make a "guffaw" kind of laugh after Artis's statement that Suchan was looking for sex "weighed very heavily in [its]

5

mind," and the court further stated, "[T]hey were prejudiced that day . . . [a]nd that did weigh very heavily in making my decision." The court explained that during the break, it went back in chambers and reviewed "the whole process" and had the court reporter play what happened, two or three times, and tried to figure out a way to cure the issue. The court stated, "But I kept hearing that juror's laugh . . . in my mind," and "because of the circumstances . . . [the State's] case was completely prejudiced."

On February 23, the circuit court denied Sims's motion to dismiss and held that (1) the statement made by Artis was hearsay; (2) prior to trial, the State agreed with defense counsel to allow Artis to testify via Zoom as long as the witness testified only about how the parties met; (3) it had concerns about Artis being able to hear adequately but allowed her to testify via Zoom due to the attorneys' agreement that the witness would not testify to "substantive matters"; (4) it believes there was a slight sound input and output delay on the Zoom, and Artis did not hear the State object prior to answering defense counsel's question; (5) after consideration, it determined that an admonishment would not be sufficient to correct the prejudice to the State; (6) the statement was so patently inflammatory and procured in a way that was prejudicial to the State due to content that went beyond the parties' agreement for Artis to appear by Zoom, and justice could not be served by continuing the trial; and (7) it did not act improvidently, thoughtlessly, or without due consideration when it determined that a mistrial was a manifest necessity.

Sims filed a timely notice of interlocutory appeal on March 24; this appeal followed.

II. *Standard of Review*

6

The circuit court's ultimate decision that the defendant's protection against double jeopardy was not violated is reviewed by the appellate court de novo with no deference to the circuit court's determination. *Shelton v. State*, 2009 Ark. 388, 326 S.W.3d 429; *Koster v. State*, 374 Ark. 74, 286 S.W.3d 152 (2008). When the analysis itself presents a mixed question of law and fact, the factual determinations made by the circuit court are given due deference and are not reversed unless clearly erroneous. *Koster*, *supra.* A mistrial is an extreme remedy that should be granted only when the error is beyond repair and cannot be corrected. *Shelton*, *supra.* The State bears the heavy burden of proving an overruling necessity for the grant of mistrial. *Koster*, *supra.* The circuit court has discretion, however, to determine whether an overruling necessity exists, which will not be reversed absent an abuse of discretion. *Id.*

III. *Points on Appeal*

On appeal, Sims argues that the circuit court erred by denying his motion to dismiss based on double jeopardy because there was not overruling necessity for the mistrial. In support, Sims makes the following subarguments: (1) Artis's testimony was not hearsay; (2) the State waived any hearsay argument by failing to object at the first opportunity to the evidence, which was cumulative to earlier testimony; (3) even if Artis's testimony constituted hearsay, there was still no overruling necessity for a mistrial; and (4) Artis's testimony did not violate any pretrial order.

IV. *Discussion*

A. Hearsay

7

Sims argues, as he did at trial, that the testimony at issue was not hearsay. Specifically, he contends Artis's testimony about Suchan wanting to have sex with someone was not offered for the truth of the matter asserted but rather to explain why Artis connected Suchan to Sims. Furthermore, Sims argues that the statement explained the declarant's then existing state of mind with regard to intent and/or plan; thus, it was not hearsay pursuant to Arkansas Rule of Evidence 803(3) (2023).

Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. Ark. R. Evid. 801(c) (2023). But an out-of-court statement is not hearsay if it has relevancy apart from the truth of the matter that it asserts or implies. *Id.* Additionally, an out-of-court statement is not hearsay under Rule 801(c) where the statement is offered to show the basis for the witness's actions. The decision to admit or exclude evidence is within the sound discretion of the circuit court, and this court will not reverse that decision absent a manifest abuse of discretion. *Scamardo v. State*, 2013 Ark. 163, 426 S.W.3d 900. An abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Id.*

We find unconvincing Sims's argument that the question posed by defense counsel and Artis's response was offered to show a basis of action (i.e., why Artis connected Suchan with Sims) rather than to prove the truth of the matter asserted. If Sims was indeed merely trying to elicit testimony to explain why Artis connected Suchan with Sims, then he would not have asked, "[S]pecifically, do you know . . . what she was looking for?" because Artis had

8

already answered defense counsel's previous question, "[W]hy did you connect him?" by replying, "[Suchan] was looking for a friend." Thus, Sims had already established the basis for Artis's action. We agree with the State that the most logical explanation for why Sims then asked Artis if she knew "specifically" what Suchan was looking for is that Artis's initial response that Suchan was "looking for a friend" is not the answer Sims wanted the jury to hear.

On appeal, Sims also argues that the statement falls under the Rule 803(3) exception as a statement of the declarant's then existing state of mind regarding intent and/or plan. Arkansas Rule of Evidence 803(3) provides that a statement is not hearsay if it is "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental feeling, pain, and bodily health[.]" This argument was not developed by Sims at trial, nor did Sims obtain a ruling on Rule 803(3) below; however, even if this argument had been developed at trial, we do not find that the circuit court's hearsay ruling was an abuse of discretion. As detailed above, Artis had already testified that she connected Suchan with Sims because Suchan was looking for a friend. Thus, Suchan's state of mind had already been established. Accordingly, we affirm the circuit court's ruling that the statement in question was inadmissible hearsay.

B. Preservation of Hearsay Objection

On appeal, Sims maintains that because the State failed to object to Artis's statement that Suchan "said she was looking for a friend," it failed to preserve the hearsay argument. We disagree. The State immediately objected when it realized that Sims was continuing down

9

the path of what Suchan allegedly told Artis. Furthermore, Sims's assertion that the evidence was merely cumulative because "Suchan had already testified to the same during her testimony" is not supported by the record. Thus, Sims's argument that the State's hearsay objection was not preserved lacks merit.

## C. Overruling Necessity

Next, Sims argues that there was no overruling necessity for a mistrial; therefore, double jeopardy attaches, and the circuit court should have granted his motion to dismiss accordingly.

When a jury is sworn to try a case, jeopardy attaches, and when the jury is discharged before the case is complete without the defendant's express or implied consent, then the constitutional right against double jeopardy may be invoked, unless the termination was justified by overruling necessity. *Wilson v. State*, 289 Ark. 141, 712 S.W.2d 654 (1986); Ark. Code Ann. § 5-1-112(3) (Repl. 2013). If a defendant consents to a mistrial, then the demonstration of "overruling necessity" is not required, so that a defendant may be retried for the same offense. *Williams v. State*, 371 Ark. 550, 268 S.W.3d 868 (2007). The relevant inquiry is whether there was an "overruling necessity" to discharge this jury.

"Overruling necessity" means a circumstance that is forceful and compelling and is in the nature of a cause or emergency over which neither court nor attorney has control, or which could not have been averted by diligence and care. *Id.* The phrase has been construed in harmony with the United States Supreme Court's definition of "manifest necessity," as described in *Arizona v. Washington*, 434 U.S. 497 (1978). *Koster, supra.* Although each case

10

must turn on its own facts, examples of an "overruling necessity" upheld on appeal include when the jury was exposed to matters outside the courtroom that could affect its judgment, a juror or material witness was ill, or defense counsel was intoxicated. *See Shaw v. State*, 304 Ark. 381, 802 S.W.2d 468 (1991); *Jones v. State*, 288 Ark. 162, 702 S.W.2d 799 (1986); *Franklin v. State*, 251 Ark. 223, 471 S.W.2d 760 (1971). The State bears the heavy burden of proving an overruling necessity. *Vasquez-Ramirez v. State*, 2019 Ark. App. 599, 591 S.W.3d 379.

The Supreme Court explained in *Arizona v. Washington* that although a defendant's right to have his trial completed by a particular tribunal is a valued right, it can be subordinated to the public's interest in fair trials designed to end in just judgments. 434 U.S. at 503. The reviewing court must be satisfied that the circuit court utilized sound discretion. *Id.* at 514. Our appellate courts have recognized the difficulty of categorizing cases involving claims of double jeopardy and the resulting inadequacy of expounding any standard formula for guidance. *See Jaynes v. State*, 66 Ark. App. 43, 987 S.W.2d 751 (1999). Consequently, each case must turn largely on its own facts. *Id.*

Here, Sims argues that the statement was not so "patently inflammatory" that prejudice could not be cured by a jury admonition. Regarding improper remarks made during trial, our supreme court has held that "even where a remark is improper, the circuit court may deny the mistrial motion and cure any prejudice by admonishing the jury to disregard the remark." *Williams v. State*, 2014 Ark. 253, at 8, 435 S.W.3d 483, 488. Among the factors to be considered in determining whether a circuit court abused its discretion in

11

denying a motion for mistrial are whether the prejudicial response was deliberately induced and whether an admonition to the jury could have cured any resulting prejudice. *Franklin v. State*, 2024 Ark. 9, 682 S.W.3d 1. Furthermore, an admonition to the jury usually cures a prejudicial statement unless it is so patently inflammatory that justice could not be served by continuing the trial. *Id.*

Sims relies heavily on this court's decision in *Everetts v. State*, 2011 Ark. App. 629. In *Everetts*, the appellant argued that the circuit court's denial of his motion to dismiss based on double-jeopardy grounds was erroneous. In direct contravention of the circuit court's ruling, a supervisor with children's services testified at trial regarding the agency's conclusion after its investigation into allegations of child abuse. As a result, the circuit court admonished the jury to disregard the statement. The State, however, moved for a mistrial, and the circuit court granted the mistrial over defense counsel's objection. On appeal, the appellant argued that the circuit court erred in denying his motion to dismiss for double jeopardy because there was no overruling necessity to discharge the jury. This court agreed and reversed, holding as follows

> On appeal, the State concedes that it is only the State's motion, granted over defendant's objection, that is at issue. The core concern was how to rectify this witness's testimony that was perceived to exceed the trial judge's evidentiary ruling. The judge was clearly focused on preventing this witness from telling the jury what conclusion to reach. The trend in our appellate case law, however, is not to limit opinion testimony that touches upon the ultimate issue, as long as it does not mandate a conclusion.

> We hold that this witness did not tell the jury what conclusion to reach, and the judge's sua sponte admonition sufficiently cured any evidentiary error or potential prejudice. There was no forceful or compelling emergency, nor was the jury exposed

12

to matters outside the courtroom. Upon de novo review, we hold that the State failed to meet its heavy burden of presenting an overriding necessity to end this trial, and the trial court rendered a manifestly incorrect decision in denying appellant's motion to dismiss.

*Id.* at 5–6 (citations omitted).

While we agree that *Everetts* is instructive, it is not dispositive here because, as detailed above, any determination of what constitutes an "overruling necessity" must turn on each particular set of facts. Here, Artis testified via Zoom, and the court noted in its order denying Sims's motion to dismiss that it was concerned about allowing a witness to testify in this manner but allowed it because the State had agreed "as long as the witness only testified about how the parties met." During the bench conference, the court stated, "I don't feel like something like that would have happened as much [in the courtroom] because she would have heard the objection." The court further explained that the situation "was concerning enough to [the court] to make a permanent decision that [it] would never allow a Zoom witness again."

Additionally, the court explained that its observation of at least one juror's guffaw after Artis stated that Suchan was "looking for someone to have sex with" weighed heavily in its decision to grant the mistrial after it went back into chambers and listened to the audio recording "two or three times." Furthermore, the circuit court gave Sims every opportunity to argue how the testimony at issue was not hearsay and whether it fell under a hearsay exception. The court also expressed its strong desire not to declare a mistrial and, accordingly, allowed both the State and Sims breaks to further develop their respective

arguments. Finally, the court expressed concern about the potential significance the jurors could assign to the testimony in question due to the sheer amount of time both counsel and the court spent attempting to remedy the entry of the inadmissible and prejudicial testimony.

For the above-stated reasons, it cannot be said that the circuit court acted "improvidently, thoughtlessly, or without due consideration." *See Lester v. State*, 2024 Ark. App. 206, at 21–22, 687 S.W.3d 344, 358–59 (stating the "lengthy discussion between the court and counsel" over the admissibility of certain statements in appellant's rape trial and the fact that "[t]he court carefully considered [appellant's] argument regarding each statement" made it apparent that the circuit court "did not act improvidently, thoughtlessly or without due consideration"). Furthermore, we hold that the circuit court's finding that the testimony was "procured in a way that was prejudicial" is supported by the record.

While we acknowledge Sims's argument that the prejudice could have been cured by an admonishment, it is well established that the circuit court is in the best position to gauge the prejudicial effect of the error, not this court. Regarding the discretion afforded the lower courts, the United States Supreme Court held in *Arizona v. Washington* as follows:

> We recognize that the extent of the possible bias cannot be measured, and that the District Court was quite correct in believing that some trial judges might have proceeded with the trial after giving the jury appropriate cautionary instructions. In a strict, literal sense, the mistrial was not "necessary." Nevertheless, the overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment.

434 U.S. at 511. Thus, we hold that the circuit court did not err in granting a mistrial.

D. Violation of Pretrial Order

14

Finally, Sims maintains that Artis did not violate any pretrial order regarding her testimony; therefore, the circuit court erred in granting the mistrial on that basis. As detailed at length above, the circuit court identified several reasons for granting the mistrial; however, the court did not find that Sims "violated a pretrial order." Accordingly, we do not address this argument on appeal.

V. *Conclusion*

For the above-referenced reasons, we affirm the circuit court's order denying Sims's motion to dismiss based on double jeopardy.

Affirmed.

WOOD, HIXSON, and MURPHY, JJ., agree.

THYER and BROWN, JJ., dissent.

**CINDY GRACE THYER, Judge, dissenting**. To start, I agree with the majority's recitation of the facts and the law in this case. I also acknowledge this court's role as a reviewing court and our stated and long-standing standard of review. In my view, however, the majority's almost singular focus on the applicable standard of review has caused it to lose sight of the larger issue here—that a specific right guaranteed by the Arkansas and United States Constitutions will be infringed upon if Sims is twice put in jeopardy solely because a witness testified to hearsay during a jury trial. As a result, I must respectfully dissent.

Analysis of Sims's double jeopardy-claims involves a three-part process: first, was Artis's statement inadmissible hearsay; second, assuming the testimony was inadmissible, was a mistrial appropriate; and finally, if the mistrial was appropriate, did the circuit court abuse

15

its discretion in determining that the constitution's double-jeopardy prohibitions were not implicated.

As discussed more fully below, I do not take issue with the circuit court's conclusion that Artis's statement constituted inadmissible hearsay. My concern arises from the circuit court's and the majority's analysis of the remaining two prongs. It is my opinion that, under the facts of this case, the motion for mistrial was improperly granted. A manifestly incorrect decision to grant a mistrial will bar subsequent prosecution. *Wilson v. State*, 289 Ark. 141, 712 S.W.2d 654 (1986). Thus, I believe our analysis should have ended there. However, even if the circuit court's decision to grant a mistrial in this case was proper, it is my belief that a mistrial resulting from the evidentiary ruling as presented here would not rise to a level sufficient to establish an "overruling necessity" to overcome a defendant's constitutional protections. Under either prong, it is my position that double jeopardy prohibits retrial under these facts.

The Arkansas Constitution provides that "no person, for the same offense, shall be twice put in jeopardy of life or liberty[.]" Ark. Const. art. 2, § 8. This prohibition against a second prosecution for the same offense is further discussed in the statute: "A former prosecution is an affirmative defense to a subsequent prosecution for the same offense [when] . . . (3) The former prosecution was terminated without the express or implied consent of the defendant after the jury was sworn . . . unless the termination was justified by overruling necessity." Ark. Code Ann. § 5-1-112 (Repl. 2013). This means that once the jury is sworn, "jeopardy has attached . . . [and] the constitutional right against double jeopardy

16

may be invoked except in cases of 'overruling necessity.'" *Green v. State*, 52 Ark. App. 244, 247, 917 S.W.2d 171, 172 (1996) (citations omitted). Moreover, this statement comports with the federal standard of "manifest necessity" as articulated in *Arizona v. Washington*, 434 U.S. 497, 505 (1978):

> [I]n view of the importance of the [defendant's valued right to have his trial completed by a particular tribunal], and the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. *His burden is a heavy one. The prosecutor must demonstrate "manifest necessity" for any mistrial declared over the objection of the defendant.*

(Emphasis added.)

I acknowledge that our task is complicated by the fact that the concept of "manifest necessity" is not amenable to a bright-line rule; rather it exists on a spectrum. At one extreme are cases in which a prosecutor requests a mistrial in order to buttress weaknesses in his evidence. *See Washington, supra.* The prohibition against double jeopardy was plainly intended to condemn the "abhorrent" practice of English judges exercising their power to discharge a jury whenever it appeared the Crown's evidence was insufficient to convict. *Id.* at 508. The strictest of scrutiny is appropriate in these circumstances. *Id.* At the other end of the spectrum is the mistrial premised upon a deadlocked jury—the classic basis for a proper mistrial. *Id.* In that circumstance, the circuit court is confronted with the situation where, on the one hand, "if he discharges the jury when further deliberations may produce a fair verdict, the defendant is deprived of his 'valued right to have his trial completed by a particular tribunal,'" and on the other hand, "if he fails to discharge a jury which is unable to reach a verdict after protracted and exhausting deliberations, there exists a significant risk

that a verdict may result from pressures inherent in the situation rather than considered judgment of all the jurors." *Id.* at 509. Under those circumstances, if a retrial were barred any time an appellate court viewed the "necessity" of a mistrial differently than the circuit court, there would be a danger that the circuit court might employ coercive means to break the deadlock. Thus, the circuit court's decision to declare a mistrial due to a deadlocked jury is accorded great deference. The facts of this case appear on the spectrum between the two extremes. While it remains our obligation to give deference to the circuit court, we should not let that deference operate so as to abrogate our responsibility to ensure that constitutional rights are not infringed upon even when, as here, a circuit court goes to great lengths attempting to ensure a fair trial to both parties. In short, I find no fault with the process employed by the circuit court and no particular fault with the prosecutor's request for mistrial. However, *Washington* and our own case law teach us that when the State chooses to request a mistrial, and a court grants that motion over a defendant's objection, the State shoulders a very heavy burden to overcome double jeopardy in a subsequent prosecution. In my opinion, the State here failed to carry that burden.

Arkansas appellate courts have long recognized the difficulty of categorizing cases involving claims of double jeopardy and the resulting inadequacy of expounding any standard formula for guidance. *See Jones v. State*, 288 Ark. 162, 702 S.W.2d 799 (1986). Consequently, each case must turn largely on its own facts. *Id.* As was said by the supreme court in *Cody v. State*, 237 Ark. 15, 21, 371 S.W.2d 143, 147 (1963) (quoting with approval 22 C.J.S. *Criminal Law* § 259):

18

The manifest necessity permitting the discharge of a jury without rendering a verdict and without justifying a plea of double jeopardy may arise from various causes or circumstances; but the circumstances must be forceful and compelling, and *must be in the nature of a cause or emergency over which neither court nor attorney has control, or which could not have been averted by diligence and care*.

(Emphasis added.)

To begin, I will not quibble with the circuit court's decision finding Artis's statement to be hearsay. Although I find it falls within a "gray" area,[1] I cannot say that the circuit court abused its discretion in sustaining the State's hearsay objection. I do, however, disagree with the circuit court's determination that this one errant statement by a witness constituted an overriding necessity to justify the drastic remedy of a mistrial. Even assuming the statement at issue was inadmissible hearsay, it was an error that could have been averted by diligence and care and did not involve an emergency or circumstances over which neither the court nor the attorney had control. Moreover, unlike the circumstances in the cases described below, the single statement at issue here did not fundamentally alter the ability of the parties to continue with trial.

---

[1]First, there is no evidence in the record of a pretrial order limiting Artis's testimony. Moreover, the court in its order denying the motion to dismiss stated that it had allowed Artis to appear via Zoom only because the parties had agreed that she would testify only about how the parties met and would not testify as to "substantive matters." However, in an email chain between defense counsel and the State, defense counsel informed the prosecutor that Artis was being called to establish background on how Suchan and Sims met. Thus, Artis's statement as to her reason for introducing Sims to Suchan could qualify as "background" and could fall within the parties' nebulous "agreement" as to the nature of Artis's permitted testimony.

In my opinion, even assuming Artis's statement was inadmissible, the State failed to meet its heavy burden of presenting an overruling necessity to end this trial. I believe the circuit court improperly concluded that a curative instruction would have been insufficient because it was unduly focused on the fact that the statement was prejudicial to the State. While it may be true that a curative instruction would refocus the jury on the statement itself, it is axiomatic that circuit courts commonly give such instructions and equally axiomatic that, once given, appellate courts assume that juries follow the law as instructed in any number of situations where evidence is presented that is more prejudicial than the single hearsay statement at issue here. *Williams v. State*, 2014 Ark. 253, 435 S.W.3d 483; *Franklin v. State*, 2024 Ark. 9, 682 S.W.3d 1. We trust juries to follow the law as instructed by the circuit court, and there is no proof in this record that this jury could not have done exactly that.

First, just as all evidence offered by the State in a criminal trial is likely to be prejudicial to the defendant to some degree, *Lester v. State*, 2024 Ark. App. 206, 687 S.W.3d 344; *Vance v. State*, 2011 Ark. 243, 383 S.W.3d 325, all evidence offered by a defendant in a criminal trial to rebut the State's case may be prejudicial to the State to some extent. That is because all relevant evidence is prejudicial—it is only unfair prejudice, substantially outweighing probative value, that mandates its exclusion. *See Vance*, 2010 Ark. App. 646, 383 S.W.3d 325. Here, Artis's statement—that Suchan wanted to have sex—was a single statement to be contrasted with Suchan's multiple statements to the contrary—that she did not want or intend to have sex with Sims that day. Thus, while prejudicial, it is not so clear

20

that, in the context of the entirety of evidence produced at trial, it was so unfairly prejudicial to warrant the drastic remedy of a mistrial; as such, the circuit court's emphasis on the apparent need for a mistrial simply due to the prejudicial nature of the testimony was misdirected.

Second, the circuit court considered only whether the error could be cured by an admonition and failed to consider other avenues available to minimize the effect of the error, if any. For one, the State could have impeached Artis. In its response to the motion to dismiss, the State indicated that Artis had given an interview to law enforcement in which she failed to mention Suchan's desire to have sex as motivation for the introduction. Thus, Artis's failure to include that information in her prior interview could have been used to impeach her at trial. Also, the State could have recalled Suchan in rebuttal to explain or deny the statement. Finally, the State could have explained to the jury that, even if Suchan had earlier sought to have sex with someone, that initial desire did not negate her ultimate decision not to have sex with Sims, as Suchan so adamantly testified. In my opinion, this one statement was not so unfairly prejudicial that justice could not have been served by continuing with the trial nor was it so prejudicial that fundamental fairness of the trial itself was manifestly affected. Therefore, I believe the circuit court abused its discretion in granting the drastic remedy of a mistrial under these circumstances.

Finally, one potentially inadmissible hearsay statement is not the type of "overruling necessity" we have found in other cases to be sufficient to overcome a double-jeopardy prohibition. *See Green*, *supra* (overruling necessity found where the prosecutor suffered a

mental breakdown and failed to return to trial after a lunch break); *Shaw v. State*, 304 Ark. 381, 802 S.W.2d 468 (1991) (overruling necessity found where a jury was unable to reach a verdict); *Koster v. State*, 374 Ark. 74, 286 S.W.3d 152 (2008) (overruling necessity found when jurors observed law enforcement defuse an explosive device that had been brought into courtroom); *Atkins v. State*, 16 Ark. 568 (1855) (overruling necessity found where a juror became ill); *Jones*, *supra* (overruling necessity found where a material witness for the State became ill); and *Franklin v. State*, 251 Ark. 223, 471 S.W.2d 760 (1971) (overruling necessity found where the defense counsel was found to be intoxicated). *Cf. Shelton v. State*, 2009 Ark. 388, 326 S.W.3d 429 (no overruling necessity where defense counsel's comment in opening statement could have been corrected by admonition or curative instruction); *Wilson v. State*, 289 Ark. 141, 712 S.W.2d 654 (1986) (no overruling necessity where defense counsel implied by one of his questions that, had defendant paid the prosecuting witness, the charges would have been dismissed); *Jones v. State*, 230 Ark. 18, 320 S.W.2d 645 (1959) (no overruling necessity where juror was related to a witness); and *Everetts v. State* 2011 Ark. App. 629 (no overruling necessity where DHS witness testified that abuse allegations had been deemed unsubstantiated despite court's prior order prohibiting such testimony).

As stated above, the State shoulders a "heavy burden" of justifying the mistrial if it is to avoid the double jeopardy bar. *Washington*, *supra*. It is not uncommon in trial for witnesses to surprise counsel with their responses or to speak before an objection can be ruled upon. In this regard, our cases are closer to the latter than the former. Thus, under these circumstances, I do not believe the State met its heavy burden.

I appreciate and understand the majority's reliance on the circuit court's due consideration to the issue at hand and the deference it has afforded it. However, the fact that the circuit court may have acted with due deliberation and consideration, cannot obviate our role in determining whether it nevertheless made a manifestly incorrect decision in finding an overruling necessity, which requires reversal. *See Shelton*, 2009 Ark. 388, at 7, 326 S.W.3d at 434 ("While the trial court acted with deliberation and consideration, it nevertheless made a manifestly incorrect decision that is reversible as an abuse of discretion in that regard."); *Everetts*, 2011 Ark. App. 629, at 2 ("The ultimate decision by the circuit court, that the defendant's protection against double jeopardy was not violated is reviewed by the appellate court de novo, with no deference to the circuit court's determination.").

Finally, I have great concern about the significant ramifications of this holding and the precedent it sets. The majority correctly points out that our holding in *Everetts* stands for the proposition that the proper remedy for a violation of a pretrial order concerning the admissibility of evidence is a curative instruction as opposed to a mistrial implicating the constitutional protection against double jeopardy. The only distinction drawn by the majority between this case and *Everetts* is premised on circuit court deference. In my view, that is a hollow distinction in light of the fact that the *Everetts* court itself tacitly acknowledged that circuit court discretion in this regard exists on a continuum and that this court is ultimately tasked with ensuring that the protection against double jeopardy is not violated. It is for this reason that the ultimate decision—whether double-jeopardy rights have been implicated—receives de novo review in this court, as noted in *Everetts*, and why, as our

23

supreme court insisted in *Shelton*, we are not bound to the court's decision simply because the court appears to have acted with some deliberation and consideration.

The charge at issue against Sims, and the *Everetts* decision itself, highlight my concern. Here, Sims was charged with rape. In my experience, it is commonplace that a motion be made and a pretrial order obtained forbidding the introduction of proof of prior sexual conduct of a victim in a rape case pursuant to Ark. Code Ann. § 16-42-101 (Supp. 2023) (Arkansas Rape Shield Statute). Had such an order been issued by the circuit court in this case and had a witness violated that order, *Everetts* points to the unmistakable conclusion that a mistrial would have been inappropriate. However, after today, witness testimony inadvertently introduced during trial in violation of Rule 802 of the Arkansas Rules of Evidence will afford a circuit court the authority to grant a mistrial over a defendant's objection without implicating double jeopardy. But the problem—and my concern—is deeper. A corollary to Arkansas's Rape Shield Statute is found in Arkansas Rule of Evidence 411, which also forbids introduction of testimony concerning a victim's prior sexual conduct in a rape case. If the majority is willing to sanction twice putting a defendant on trial where a witness testifies to hearsay in violation of Rule 802, it would almost certainly find no double jeopardy violation when testimony was offered in violation of Rule 411. Thus, after today, a defendant's constitutional right against being placed twice in jeopardy hinges solely on whether a pretrial order is obtained or whether a circuit court's contemporaneous ruling is made pursuant to Rule 411. That is a hair I am not willing to split.

Thus, after today, our law provides that double jeopardy **_IS_** implicated when a mistrial is based on an inappropriate statement made in opening (*Shelton*, *supra*) and **_IS_** implicated when testimony is inadvertently obtained in violation of a pretrial order (*Everetts*, *supra*), but it is **_NOT_** implicated when the mistrial is based on objectionable hearsay. The decision today (1) has created a new permissible double jeopardy/mistrial category where inadmissible hearsay entitles the State to retry a defendant when that hearsay is prejudicial and, (2) in light of *Shelton* and *Everetts*, has created subcategories where inappropriate statements made by counsel during the trial and violations of pretrial court orders are not an "overruling necessity" sufficient to overcome the prohibition against double jeopardy but a witness's inadvertent hearsay is.

For these reasons, I dissent.

BROWN, J., joins.

*Lassiter &* Cassinelli, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Christian Harris*, Ass't Att'y Gen., for appellee.